Oralee D. LLOYD, Petitioner,

v.

U. S. DEPARTMENT OF LABOR,
Respondent.

Elaine ABTS; Shirley Mitchell; Corine
Howarter; Alice V. Smith; and
Shirley A. Smith, Petitioners,

v.

U. S. DEPARTMENT OF LABOR,
Respondent.

Keith R. KLEMME, Petitioner,

v.

U. S. DEPARTMENT OF LABOR,
Respondent.

Valorie Anne REPKA, Petitioner,

v.

U. S. DEPARTMENT OF LABOR,
Respondent.

King FOX, Clarence Domingo, Warren S.
Short and Robert Stevenson, on behalf
of a group of Kaiser Steel Corporation
Workers, Napa, California, Petitioners,

v.

UNITED STATES DEPARTMENT OF
LABOR, Harold A. Bratt, Harry J. Gil-
man and Marvin Fooks, Respondents.

Nos. 76–3253, 76–3269, 76–3333,
76–3334 and 78–3357.

United States Court of Appeals,
Ninth Circuit.

Submitted July 8, 1980.

Decided Nov. 3, 1980.

Rehearing Denied March 30, 1981.

**1268**

Jon P. Camp, Eugene Flynn Sullivan, Graham & Camp, San Francisco, Cal., on briefs, for petitioners.

James A. Greene, Donald S. Shire, Dept. of Labor, Washington, D. C., on briefs, for respondent.

Before ANDERSON and TANG, Circuit Judges, and CRAIG,* District Judge.

TANG, Circuit Judge:

These consolidated cases involve challenges to determinations by the Labor Department that certain workers are not eligible to apply for worker adjustment assistance under relevant provisions of the Trade

* Honorable Walter E. Craig, United States Senior District Judge for the District of Arizona, sitting by designation.

Act of 1974. Petitions 76–3253, 76–3269, 76–3333, and 76–3334 were consolidated because they arise from a common factual setting or because they involve a common legal issue—namely, the application of the one–year eligibility restriction of § 223(b)(1) of the Trade Act, 19 U.S.C. § 2273(b)(1). Although it arises from a different factual setting, the Fox petition, No. 78–3357, was consolidated with the others because it shares this legal issue. In addition the Fox petition raises other questions. We have jurisdiction under § 250 of the Trade Act, 19 U.S.C. § 2322.

### I.

### The Statute

The Trade Act of 1974, 19 U.S.C. ch. 12, §§ 2101–2487, includes provisions for adjustment assistance for workers who lose their jobs due to increased imports of competitive products. See 19 U.S.C. §§ 2271–2322. Workers who have been or are threatened to be totally or partially separated may file with the Secretary of Labor a petition for certification of eligibility to apply for adjustment assistance. Upon receipt of such petition, the Labor Department commences an investigation. Upon request by the petitioners or other interested parties, a hearing is held. 19 U.S.C. § 2271.

After the investigation, the Secretary certifies a group of workers as eligible if certain requirements are met. 19 U.S.C. § 2272. A certification of eligibility applies to all affected workers at the firm within the terms of the certification, not only to those who brought the petition. The certification of eligibility itself does not entitle the workers to assistance; rather it is akin to a preliminary entitlement step. Only those in the eligibility group may apply for assistance. See 19 U.S.C. §§ 2273(a) and 2291. Sections 2291–2298 set up complex requirements as to who can receive benefits and what the amounts should be. Those

provisions are not involved in this case, except potentially for petitioner Lloyd, because the Secretary determined that the workers before the court were not eligible.

In addition to the eligibility requirements listed above, the Act puts other limitations on the Secretary's ability to certify a group of workers as an eligibility class. First, the Secretary must specify the date on which the total or partial separations began (the "impact date"). 19 U.S.C. § 2273(a). Second, when the layoffs are no longer attributable to conditions meeting the Act's requirements, the Secretary must terminate eligibility and publish a "termination date." 19 U.S.C. § 2273(d). Finally, layoffs occurring more than one year before the date of the petition cannot be in the eligibility class. This is the central issue in these petitions. The full provision reads:

> (b) A certification under this section shall not apply to any worker whose last total or partial separation from the firm or appropriate subdivision of the firm before his application under section 231 [§ 2291] occurred—
>
> > (1) more than one year before the date of the petition on which such certification was granted.

19 U.S.C. § 2273(b)(1). *See also* 29 C.F.R. § 90.16(e) (regulations repeating statutory provision).

The Secretary's determination of eligibility and the reasons for it are published in the Federal Register. 19 U.S.C. § 2273(c). Workers aggrieved by a final determination may file a petition for review of the determination with the appropriate circuit court of appeals or with the District of Columbia Circuit within 60 days after notice of the final determination. 19 U.S.C. § 2322(a). The Secretary's findings of fact, if supported by substantial evidence, are conclusive; but on good cause shown the case can be remanded for taking further evidence. 19 U.S.C. § 2322(b).

In the cases at bar the basic facts are undisputed. In the Abts, Klemme, and Repka petitions the issue is the application of the one–year limit of 19 U.S.C. § 2273(b)(1). In the Lloyd petition, the one–year limit has also been raised, but there is first a threshold question whether Lloyd has yet been aggrieved by the Secretary's action. In the Fox petition, in addition to the one–year limit issue, questions are raised concerning the timeliness of the petition for review under 19 U.S.C. § 2322(a) and concerning the Secretary's choice of the "appropriate subdivision" under 19 U.S.C. § 2272(1) and (3).

## II.

The Abts, Klemme, and Repka Petitions (Nos. 76–3269, 76–3333, and 76–3334)

### A. Factual Background

The Motorola Company operates electronics semiconductor assembly plants in Mesa and Phoenix, Arizona, and in Austin, Texas. In 1974 and 1975 workers at these plants were laid off or took lesser jobs. These cutbacks apparently were due to competition from increased imports of semiconductors. On January 9, 1976, workers at the Mesa plant filed a petition for eligibility for adjustment assistance under the Trade Act. The date on the petition was December 8, 1975. The Department of Labor commenced an investigation. The investigation was expanded to include the Phoenix and Austin plants.

The Labor Department made a determination of eligibility on April 7, 1976 (published in the Federal Register at 41 Fed. Reg. 16630 (April 20, 1976)), but after further evidence and investigation issued a revised determination on June 18, 1976 (published in the Federal Register at 41 Fed. Reg. 27463 (July 2, 1976)). The Secretary determined: 1) Workers engaged in the production of integrated circuits at the Mesa and Phoenix plants who became totally or partially separated from employment on or after December 8, 1974, were eligible; 2) Workers engaged in production of discrete semiconductor devices (transistors, diodes, rectifiers) at the Phoenix plant who became totally or partially separated on or after December 8, 1974, and before April 1, 1975 were eligible; 3) Workers engaged in production of MOS (metal oxide semicon-

ductors) at the Phoenix plant were not eligible; and 4) Workers at the Austin plant were not eligible.

It appears that all of the Motorola petitioners before the court worked at Mesa, although some may have worked in Phoenix. In any event, the stumbling block for their eligibility, except for petitioner Lloyd, is the December 8, 1974 initial cut off date for eligibility. The Secretary set up that date because it is one year prior to the date of the petition. See 19 U.S.C. § 2273(b)(1). Petitioners Abts, Mitchell, Howarter, A. Smith, and S. Smith (No. 76–3269) were laid off on November 23, 1974. Petitioner Klemme (No. 76–3333) was laid off on November 8, 1974. Petitioner Repka (No. 76–3334) was laid off sometime prior to December 8, 1974. Petitioner Lloyd (No. 76–3253) was not laid off but took a reduction in job and pay on March 15, 1975. Her petition raises different issues. We assume the other petitioners would have been eligible but for the Labor Department's application of the one–year rule.

The various petitioners, proceeding pro se, sent letters to this court seeking review of the Secretary's determination. The letters, which the court treated as petitions for review, were within the 60 day time limit of § 2322(a). Other letters of the petitioners were accepted in lieu of briefs. The gist of petitioners' grievance is that they too were laid off because of imports and it is therefore unfair that they are denied adjustment assistance, while others similarly situated are eligible, merely because they were laid off before December 8, 1974. Klemme also alleges he was unaware of the existence of the Trade Act program until 1976. The Abts group of petitioners also allege that in addition to being laid off, they were not given the chance to return to second shift work and that, if they had been, they would not have been laid off until after the qualification date.

## B. The One–Year Rule

The petitioners were laid off prior to December 8, 1974. This was more than one year prior to the date of the petition. The Secretary's determination denied certification of eligibility for adjustment assistance to Motorola workers separated from employment before December 8, 1974.

Under the Act the Secretary must specify the date on which the total or partial separations attributable to increased imports began or threatened to begin. 19 U.S.C. § 2273(a). This date is referred to by Department of Labor regulations as the "impact date," which is "the earliest date on which any part of the total or partial separations involving a significant number or proportion of workers began or threatened to begin." 29 C.F.R. § 90.16(d)(2).

But the statute further provides that, regardless of the actual impact date, no certification may apply to any worker whose last total or partial separation from the firm occurred more than one year before the date of the petition on which certification was granted. 19 U.S.C. § 2273(b)(1).

In these cases, the date on the petition submitted by the Motorola workers was December 8, 1975. Thus, by the express terms of the one year rule as established by Congress, any Motorola worker who was separated prior to December 8, 1974, apparently may not be certified as eligible to apply for adjustment assistance. In making this determination, the Labor Department was merely applying the terms of the statute as created by Congress.

The statute itself is silent on the purpose of the one–year limit. The Senate and Conference Reports on the 1974 Trade Act are similarly quiet. See, e. g., S.Rep. No. 93–1298, 93d Cong., 2d Sess., reprinted in [1974] U.S.Code Cong. & Admin.News, pp. 7186, 7276. However, reasons for the rule were indicated in testimony during hearings in 1976 on a proposed amendment which would have modified the one–year limit. In order to serve the Act's purposes of retraining, adjustment, and relocation, it was important that workers claim and receive benefits promptly after discharge. There were also other advantages—such as freshness of records and other evidence—to be gained by promptness. See Eligibility of

*Workers to Receive Adjustment Assistance: Hearings on H.R. 15421 Before the Subcommittee on Trade of the House Comm. on Ways and Means*, 94th Cong., 2d Sess. 4 (Sept. 28, 1976) (statement of Mr. Segall). Other provisions of the Act, such as the speed with which the Secretary must make the determination of eligibility, *see* 19 U.S.C. § 2273(a) (60 days), or the maximum durational limits on the Act's benefits, *see* 19 U.S.C. § 2293, similarly evidence congressional concern that affected workers receive adjustment assistance promptly when it will do the most good for retraining and relocation. *See also Usery v. Whitin Machine Works, Inc.*, 554 F.2d 498, 502 (1st Cir. 1977). Assistance under the Trade Act is for certain specified purposes; it is not intended to be merely a supplemental unemployment benefit. *See United Glass and Ceramic Workers v. Marshall*, 584 F.2d 398, 407 (D.C. Cir. 1978) (hereinafter *United Glass Workers*). Presumably Congress established the one-year rule both in order to encourage workers to file promptly and in order to ensure that benefits under the Act were used for the purposes envisioned by the Act. Thus, when workers fail to apply timely for benefits and so are not eligible, it is not that they are being penalized for failure to file; rather they simply are so longer within the category Congress intended to aid by this program.

Moreover, again in 1978, another bill was introduced which, among other changes, would have modified the one-year limit. *See* H. R. 11711, 95th Cong., 2d Sess. § 101 (1978). The provision was reported favorably out of committee. *See* H.Rep. No. 95–1061, 95th Cong., 2d Sess. 2–7 (1978). The committee report recounted the problems created by the one-year rule especially in the early years of the Trade Act before workers were aware of its availability. Nevertheless, the change was not enacted. Thus, since the Trade Act became law Congress at least twice has considered proposals which would have altered the one-year rule. Congress has known of the manner in which the Labor Department applies the statutory requirement. Yet, the one-year limit was retained.

Petitioners present a sympathetic argument. But in view of the congressional purpose and history of this provision and its proposed amendments, we must apply the one-year rule as it was enacted. Efforts to ameliorate the rule should be directed to Congress. *See Machine Printers and Engravers Association v. Marshall*, 595 F.2d 860, 862 (D.C. Cir. 1979) (per curiam). *See also Fortin v. Marshall*, 608 F.2d 525, 529 (1st Cir. 1979).

In Nos. 76–3269, 76–3333, and 76–3334, we find the Labor Department's decision was in conformity with applicable law. The decision of the Secretary is affirmed, and the petitions for review are denied.

## III.

### The Lloyd Petition (No. 76–3253)

Although she was also a Motorola employee, Lloyd's petition for review presents different problems. Her letter filed in lieu of a brief states that she suffered a reduction in job rating and pay on or about March 15, 1975 instead of being laid off. Taking a job at lower pay may constitute "partial separation" under the Act. *See* 19 U.S.C. § 2319(6). Lloyd was covered by the determinations made by the Secretary of Labor regarding the Motorola workers on June 18, 1976 and published in the Federal Register. *See* pages 1269–1270 *supra* (Secretary's determination by category). Unfortunately, in the record before us, it is not stated whether Lloyd worked in the Phoenix plant on MOS production, in the Mesa plant on integrated circuits, or in the Phoenix plant on discrete semiconductors.

If Lloyd worked at Phoenix on MOS production, she would not be eligible because the Secretary found that MOS job losses were not due to imports. She would be able to challenge this negative determination of eligibility, and we would have jurisdiction, under 19 U.S.C. § 2322(a). But because the determination regarding MOS production is highly technical and factual and because substantial supporting evidence appears in the record, the Secretary would

be affirmed under the deference required by 19 U.S.C. § 2322(b).

However, it appears more likely that Lloyd worked at Mesa on integrated circuits or at Phoenix on discrete semiconductors. Hereafter we treat Lloyd's petition on that basis.

■ Since she was in one of those workers' groups, she would have been in the eligibility group as found by the Secretary because her partial separation on March 15, 1975 was within the time limits. As one in the eligibility group, she should have applied for benefits pursuant to § 231 of the Trade Act, 19 U.S.C. § 2291. The records and briefs do not disclose whether Lloyd made such application. Since she would have been within the eligibility group as determined by the Secretary, Lloyd was not "aggrieved" by the Secretary's § 2273 determination. Therefore her petition for review is premature, and this court lacks jurisdiction under 19 U.S.C. § 2322(a).

The Department of Labor suggests that we, in effect, treat Lloyd as having already applied for benefits and been denied. The Department asks us to rule on what then would be the merits of Lloyd's claim and to affirm the Secretary. But this raises additional jurisdictional problems.

Once the group of workers is certified as eligible, each worker must apply individually and meet certain requirements. If Lloyd hereafter applies for benefits under 19 U.S.C. § 2291, she ultimately may be denied on the ground that she does not qualify because her individual job reduction does not meet the requirements for a partial separation. See 19 U.S.C. § 2291(1) (requirement of total or partial separation) and § 2319(6) (definition of partial separation). Lloyd states that her weekly salary was reduced from $168.80 to $151.60. This is a reduction to approximately 89.8% of her prior salary, but "partial separation" requires a reduction to 80% or less of one's prior salary. See 19 U.S.C. § 2319(6)(B).

Lloyd has not yet made application for benefits to the appropriate administering agency. Accordingly, there has been no factual development or decision below as to her individual qualification for benefits. Therefore, it would be premature for us to rule on that matter today. More importantly, 19 U.S.C. § 2322(a) provides for judicial review only of eligibility determinations under 19 U.S.C. § 2273. Once an eligible worker applies for benefits under 19 U.S.C. § 2291, judicial review of determinations of an individual's entitlement to program benefits is provided, not under 19 U.S.C. § 2322, but by 19 U.S.C. § 2311 (if administration is through a state agency) or by 19 U.S.C. § 2312(b) (if not state administration). Under neither of these provisions is review initially in the circuit courts of appeals. Therefore, even if we do as the Department of Labor suggests and treat Lloyd as having applied for benefits and been denied, we have no jurisdiction at this time to rule on the merits of her putative claim.

If Lloyd worked at Phoenix on MOS production, then treating her petition as a petition to review that negative eligibility determination, we would affirm the Secretary and deny review. Assuming Lloyd worked in Mesa or with one of the other Phoenix groups, she was within the eligibility determinations of the Secretary and so is not "aggrieved" under the meaning of 19 U.S.C. § 2322 and cannot petition for review. Accordingly, petition No. 76–3253 is dismissed.

## IV.

### The Fox Petition (No. 78–3357)

#### A. Factual Background

On a petition dated January 5, 1978, certain workers at Kaiser Steel Corporation's plant in Napa, California petitioned for eligibility for adjustment assistance. On January 9, 1978, the petition was received by the Office of Trade Adjustment Assistance of the Department of Labor (OTAA). An investigation was initiated thereafter.

The Napa plant makes steel pipe and fabricated steel products (oil rigs, drilling platforms, etc.). However, while the pipe is sold to customers, the fabrication aspect of the Napa plant does not produce finished articles. Rather, subassemblies are forged

at Napa and then shipped by barge down-river to Kaiser's assembly yards at Oakland and Vallejo where they are assembled and completed. Accordingly, OTAA expanded the investigation (begun by one group at Napa) to include the entire Napa, Vallejo, and Oakland facilities. The Secretary of Labor determined that the Vallejo and Oakland assembly yards functioned as an integrated part of the Napa plant's fabrication process. And so, the "appropriate subdivision" for 19 U.S.C. § 2272(1) was defined to include Vallejo and Oakland.

The Secretary determined that competition from imports had contributed importantly to job losses at Napa, Vallejo, and Oakland, and so certified the workers at those three facilities as eligible to apply for assistance based on the January 5, 1978 petition (as expanded). But, pursuant to the one–year rule of 19 U.S.C. § 2273(b)(1), the Secretary set the beginning cut–off date for eligibility at one year prior to the petition date. Thus, Napa workers laid off prior to January 5, 1977 were not eligible for assistance. The Secretary's initial Napa determination appears at 43 Fed.Reg. 30930 (July 18, 1978). The petitioners before the court are such workers laid off at Napa before January 5, 1977.

These workers–i.e., Fox, Domingo, Short, Stevenson, and the group they represent–applied for reconsideration of this determination. They raised an earlier (October 1976–May 1977) eligibility determination involving Kaiser's plant at Fontana, California. They argued that the earlier investigation and determination of eligibility of workers at Kaiser's steel plate manufacturing plant at Fontana, California, should have been expanded to include Napa workers (just as the Napa investigation was expanded to include Oakland and Vallejo) and that, if the Fontana determination had been expanded, Napa workers would also have been found eligible at that earlier time. The date of these petitioning workers' lay–offs then would have been within the time limits of that earlier "Fontana–based" eligibility group.

The Kaiser steel plant at Fontana manufactures steel plate and steel products. A substantial part (35–40%) of the Fontana plate is not sold directly to customers, but is shipped to the Napa fabricating plant where it is made into pipe. On October 10, 1976, Fontana workers filed a petition for eligibility with the Department of Labor. An investigation was conducted; it was determined that imports had contributed to job losses at the Fontana plant; and so the workers' groups were certified as eligible. The Fontana determination is broken down according to product lines (pipe, shapes, plate, sheet, bars, etc.). Pipe production at Fontana was reduced enough to qualify those Fontana workers for eligibility for assistance. Reduced production of plate was significant enough to qualify those Fontana workers. Plate produced for shipment to be made into pipe at Napa fell even more than plate produced for direct sale. See 42 Fed.Reg. 26485 (May 24, 1977) (the Fontana determination).

In their Application for Reconsideration, the ineligible Napa workers (the Fox group) argued that it was inconsistent and arbitrary for the Secretary sua sponte to have expanded the Napa determination while failing to have expanded the Fontana determination. The workers contended the circumstances disclosed in the Fontana determination (i. e., pipe reduction at Fontana and reduction of plate produced for Napa at Fontana) were sufficient to require the Secretary to expand the investigation to include Napa and to determine that "Fontana plate production plus Napa pipe production" was an appropriate subdivision just as "Napa product production plus Oakland/Vallejo assembly" was an appropriate subdivision. Essentially, the petitioners attacked the Secretary's choice of "an appropriate subdivision" under 19 U.S.C. §§ 2272 & 2273 in the Fontana determination.

The Department of Labor denied reconsideration. 43 Fed.Reg. 43582 (Sept. 26, 1978). The reasons for the denial were that the Fontana determination did not depend on reduced shipments to the Napa plant, that the Fontana determination did not depend on the adverse impact of imports on

Napa pipe, and that the Fontana–Napa link was not comparable to the Napa–Vallejo/Oakland link, since the latter was more direct and integrated. Thus, there was no nexus between the Napa and Fontana plants requiring that the earlier Fontana determination should have included the Napa plant.

The Fox group of Napa workers petitioned this court for review of the Secretary's adverse decision on reconsideration.

### B. The Napa Determination and the One–Year Rule

The petitioners were excluded from the Napa eligibility determination by the operation of the one–year limit of 19 U.S.C. § 2273(b)(1). The dates of their total or partial separations were more than one year before the Napa petition for certification. The petitioners' first argument is a challenge to the Labor Department's application of the one–year limit. As we discussed above with regard to the Motorola petitions, this argument fails.

### C. The Fontana Determination and an Appropriate Subdivision

Petitioners' second argument is a challenge to the appropriate subdivision used in the Fontana determination. Just as the Napa investigation was expanded to include the Oakland and Vallejo facilities within the appropriate subdivision, so the Fontana determination should have included the Napa plant in its appropriate subdivision. If that had been the subdivision in the Fontana determination, these petitioners would have been eligible to apply for assistance.

### 1. Reviewability

Under the workers' adjustment assistance provisions of the Trade Act, workers aggrieved by a final determination of the Secretary "may, within 60 days after notice of such determination, file a petition for review" in the appropriate circuit court of appeals. 19 U.S.C. § 2322(a). Failure to file the petition timely is jurisdictional. But administrative reconsideration tolls the time until the reconsideration is decided whence the 60–day period runs. *See, e. g., Samuel B. Franklin & Co. v. Securities and Exchange Commission,* 290 F.2d 719, 725 (9th Cir.) (en banc), *cert. denied,* 368 U.S. 889, 82 S.Ct. 142, 7 L.Ed.2d 88 (1961). *See also* 29 C.F.R. § 90.18(e) (negative determination regarding a reconsideration is a final determination for § 2322 review).

The Fontana determination was made on May 24, 1977. The initial Napa determination was made on July 18, 1978, and the final determination after reconsideration was on September 26, 1978. The petition for review in this court was filed October 25, 1978. Thus the petition was timely from the September 26th denial of reconsideration but not timely from the Fontana determination. Insofar as the petition for review attacks the Fontana determination, the Department of Labor argues it is not timely under 19 U.S.C. § 2322(a) and must be dismissed. However, for all practical purposes, the Department of Labor treated the claims in the September 26th Napa Application for Reconsideration as a reconsideration of the Fontana determination. Its denial of reconsideration addresses the merits of the workers' arguments that the Fontana eligibility determination should have included them. Thus, the denial of reconsideration was a denial of a request to reopen and reconsider the Fontana determination. Under applicable regulations, application for reconsideration *should be filed within 30 days* of the determination. 29 C.F.R. § 90.18(a). This Napa reconsideration was not filed within 30 days of the Fontana determination. But the fact remains that the Labor Department treated it as a reconsideration of the Fontana determination and addressed the substantive arguments. Although it was filed late, the Labor Department allowed this to be a reconsideration of the Fontana determination. Therefore, the timely petition for review from the denial of that reconsideration properly and timely presents before us the merits of the Fontana determination.

## 2. The merits

The question presented for review, essentially, is whether the Secretary's choice of "an appropriate subdivision" in the Fontana determination was reasonable. The Secretary maintains the Fontana plant alone is an appropriate subdivision, while the Napa workers argue that "an appropriate subdivision" would have been the "Fontana plate into Napa pipe" unit.

The Department of Labor's regulations under the adjustment assistance provisions of the Trade Act define "appropriate subdivision" as follows:

> "Appropriate subdivision" means an establishment in a multi–establishment firm which produces the domestic articles in question or a distinct part or section of an establishment (whether or not the firm has more than one establishment) where the articles are produced. The term "appropriate subdivision" includes auxiliary facilities operated in conjunction with (whether or not physically separate from) production facilities.

29 C.F.R. § 90.2. This definition has connotations that a subdivision can never be larger than a single "establishment." The definition's limited use of "auxiliary facilities" implies that any physically separate operation may be part of a subdivision only if it is merely auxiliary and used in conjunction with the main production unit. In the recent past the Secretary expressly has taken the position that an appropriate subdivision can never be larger than a plant. *See International Union, United Automobile Workers, etc. v. Marshall*, 584 F.2d 390, 394 & n.15 & 397 (D.C. Cir. 1978) (hereafter *United Auto Workers*). It is likely the original reason why the Fontana determination was limited to the Fontana plant alone was because of this position.

■ The D.C. Circuit in *United Auto Workers* rejected the Secretary's blanket rule. We agree. The mechanical adoption of the plant as the appropriate subdivision without reasoned analysis is improper. The circumstances of each case must be examined to determine the appropriate subdivision in that case. *See United Auto Workers*, 584 F.2d at 397–98.

■ However, in denying reconsideration later, the Department of Labor did analyze the factual circumstances and did give reasons why it would not expand the Fontana determination to include Napa. Thus, unlike *United Auto Workers*, this is a case where evidence and a reasoned position appear in the record. Therefore, under the usual deference to the Secretary's findings, we must uphold the Secretary's decision. 19 U.S.C. § 2322(b) (Secretary's findings shall be conclusive if supported by substantial evidence). *See Paden v. U.S. Department of Labor*, 562 F.2d 470, 475 (7th Cir. 1977) (Secretary's application of what is appropriate subdivision in this instance is upheld). *Cf. United Glass and Ceramic Workers v. Marshall*, 584 F.2d 398 (D.C. Cir. 1978) (Secretary's interpretation and application of term "contributed importantly" upheld); *United Shoe Workers v. Bedell*, 506 F.2d 174 (D.C. Cir. 1974) (under prior Trade Act court upholds Secretary's interpretation that imports of finished women's shoes are not "like or directly competitive with" domestic shoe components); *Machine Printers and Engraver's Ass'n v. Marshall*, 595 F.2d 860 (D.C. Cir. 1979) (applying *United Shoe Workers*, court upholds Secretary's finding that imports of textiles causing reduced domestic textile production are not like or direct competitive with plants producing devices for printing designs on fabric).

A plausible argument can be made for treating "Fontana plate into Napa pipe" as an integrated unit. Indeed, if presented anew to the Department of Labor, the Secretary justifiably could make such a determination. However, the choice of an appropriate subdivision which the Secretary has made also is supported by substantial evidence and reasoned analysis. We must, therefore, affirm the Secretary and deny review in this petition.

## V.

### Conclusion

In Nos. 76–3269, 76–3333, and 76–3334, the Secretary is affirmed and review de-

nied. In No. 76–3253, the petition for review is dismissed because the petitioner is not an aggrieved party under the provisions creating our jurisdiction to hear such petitions for review. In No. 78–3357, the petition is timely, but on the merits we affirm the Secretary and deny review.

SO ORDERED.