**FORMER EMPLOYEES OF WEST-MORELAND MANUFACTURING COMPANY, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**Court No. 86–03–00368.**

United States Court of International Trade.

Dec. 11, 1986.

Mary S. Stone, pro se.

Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Elizabeth C. Seastrum, Civil Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## OPINION

RESTANI, Judge:

Plaintiffs, former employees of the Westmoreland Manufacturing Company, challenge the Secretary of Labor's (Secretary) denial of certification of eligibility for adjustment assistance for workers benefits under the Trade Act of 1974. 19 U.S.C. §§ 2271–2321, 2395 (1982 & Supp. III 1985). The Secretary denied certification on the ground that plaintiffs had failed to file their petition within a year of their separation from the firm. Defendant contends that the delinquent filing precludes certification. According to the record, the petition was filed more than a year after the separations occurred—the plant closed and all the workers were separated on August 27, 1984, and the petition is dated September 5, 1985.[1] Plaintiffs argue, however, that because they were neither advised of their rights, nor had actual knowledge of them, the one-year time limit should not bar their certification.

The Trade Act of 1974 provides for adjustment assistance for workers who lose their jobs when increases of imports of competitive products contributed importantly to the loss of jobs. *See* 19 U.S.C. §§ 2271–2321 (1982 & Supp. III 1985). Workers seeking adjustment assistance may file a petition for certification of eligibility with the Secretary. *Id.* § 2271(a). Upon receipt of the petition, the Secretary commences an investigation. *Id.* Within sixty days after receiving the petition, the Secretary determines whether the petitioning group meets the requirements for eligibility as set out in section 2272.[2] *Id.* § 2273(a).

In addition to meeting the group requirements for certification of eligibility to apply for assistance, individual workers must still meet the qualification requirements of 19 U.S.C. § 2273, which provides, in relevant part, as follows:

(b) A certification under this section shall not apply to any worker whose last total or partial separation from the firm

---

1. The three workers who filed the petition were actually separated from their jobs prior to August 27, 1984. Inasmuch as the later date, at which time all workers were separated, is outside the one-year period, the fact that these workers were separated three to five days earlier is not relevant.

2. In this case, the Secretary's determination terminating the investigation was issued more than 60 days after the date the petition was filed. Inasmuch as § 2273(a) is not a mandatory provision and plaintiffs were not prejudiced by the Secretary's non-compliance with the statute, the delay did not affect the Secretary's jurisdiction. *See Katunich v. Donovan,* 8 CIT 156, 160–62, 594 F.Supp. 744, 748–50 (1984).

or appropriate subdivision of the firm before his application under section 2291 of this title occurred—

> (1) more than one year before the date of the petition on which such certification was granted....

*See also* 29 C.F.R. § 90.16(e)(1) (1985) (regulations repeating statutory provision).

■ The Secretary of Labor's obligations under the adjustment assistance for workers program extend beyond receiving, investigating and making determinations upon petitions which are filed. Under 19 U.S.C. § 2275, which Congress added to the statute in 1981, the Secretary has a duty to provide information to workers regarding benefits and eligibility. Specifically, the statute sets forth that:

> The Secretary shall provide full information to workers about the benefit allowances, training, and other employment services available under this part and about the petition and application procedures, and the appropriate filing dates, for such allowances, training and services....

The question underlying plaintiffs' *pro se* complaint is whether the application of the one-year qualification period of section 2273(b)(1) is contingent upon the Secretary's compliance with its duty to provide information under section 2275, or otherwise is waivable where the workers filing

the petition are ignorant of the qualification period.

Defendant moves to dismiss plaintiffs' challenge for failure to state a claim as to which relief can be granted. The one-year rule, Defendant argues, limits the waiver of sovereign immunity and must therefore be strictly construed in favor of the government.[3] Defendant concludes that any efforts to ameliorate the one-year rule must be directed toward Congress, and that Plaintiffs' remedy, if any, for the Secretary's failure to comply with its duty to provide information under section 2275 is an action under the Administrative Procedure Act to obtain an order to compel the Secretary to implement that provision.

### THE ONE–YEAR RULE

Under the earlier Trade Expansion Act of 1962, there was no arbitrary cutoff period, but rather, certification applied to workers separated after the date which the Secretary of Labor certified that unemployment or underemployment began (the impact date). Trade Expansion Act of 1962, Pub.L.No. 87–794, § 322(a), 76 Stat. 872 at 892. The one-year qualification period in § 2273(b)(1) first appeared in the Trade Act of 1974. Thus, under present law the certification would apply only to those individuals who were separated within the year before the filing of the petition, and not to

---

**3.** If a court views a statute of limitations, with no internal tolling provision, as a limit upon the class Congress has empowered to sue, or as another limit on the subject matter jurisdiction of the court, the court likely will conclude that the limitations period cannot be waived or tolled, even in the most equitable of situations. In two recent cases the Court of Appeals found a statute of limitations to be jurisdictional, and held that the court could not make an equitable determination as to whether the limitations period had run. *NEC Corp. v. United States*, 806 F.2d 247 (Fed.Cir.1986); *Georgetown Steel v. United States*, 801 F.2d 1308, 1312 (Fed.Cir. 1986). In such cases the court makes a determination that Congress allowed no latitude for waiver or tolling. On the other hand, sometimes statutes of limitations involving the government are found to be non-jurisdictional. In *Bowen v. City of New York*, ── U.S. ──, 106 S.Ct. 2022, 2029–30, 90 L.Ed.2d 462 (1986), involving review of a Social Security Administra-

tion decision, the Supreme Court held that in such situations equitable tolling is available if it is appropriate in the particular case and is consistent with Congressional intent. There are some traditional factors to weigh in making the determination as to whether a statute of limitations is jurisdictional, but a court always should be guided by Congressional intent, as demonstrated by the language and structure of a statute or by its legislative history, rather than by simple formulas. One of the predecessors to our Court of Appeals recognized the necessity of focusing on Congressional intent in this area, and allowed tolling with respect to an administrative review period. *Farrell Lines, Inc. v. United States*, 69 CCPA 1, 6, 657 F.2d 1214, 1218 (1981). The discussion which follows demonstrates that tolling would be inconsistent with Congressional intent, whether or not the administrative limitations period impacts on sovereign immunity or jurisdiction.

other workers who were separated earlier, regardless of the fact that the same increases of imports of competitive products contributed importantly to all of the separations.

Neither the statute nor the applicable regulation provides for tolling or waiving of the one-year rule. The rule has been strictly applied by the Secretary to deny certification for groups of workers where, as here, the entire group had been separated more than one year before the filing of the petition, as well as to deny benefits to individual members of a group, where they were unaware of the program or filing procedures. *See* Staff of House Subcommittee on Trade of the Committee on Ways and Means, 95th Cong., 1st Sess., *Background Materials on the Trade Adjustment Assistance Programs Under Title II of the Trade Act of 1974* 4 (Comm. Print 1977). The Secretary's application of the rule was upheld by the courts and acquiesced in by Congress prior to the creation of the statutory duty to inform workers.

In one case involving the proper interpretation of the one-year rule the Court of Appeals for the Ninth Circuit held that section 2273(b)(1) explicitly excludes a worker separated more than a year prior to the date of the petition from being certified as eligible to apply for adjustment assistance, even where it was alleged a worker was unaware of the program until after the one-year period had lapsed. *Lloyd v. U.S. Department of Labor*, 637 F.2d 1267 (9th Cir.1980). Although the court noted that the 1974 Trade Act and its legislative history was silent as to the purpose of the one-year limit, it relied on testimony offered during a 1976 Congressional hearing and a 1978 House report, both discussing proposed amendments to the one-year rule, as evidence of Congressional intent.[4] *Id.* 1270–1271.

The 1976 hearings involved a proposed amendment to replace the one-year limit with the date on which import-related layoffs began or threatened to begin, as specified in the certification. *Eligibility of Workers to Receive Adjustment Assistance: Hearings on H.R. 15421 Before the Subcomm. on Trade of the House Comm. on Ways and Means,* 94th Cong., 2d Sess. (1976). Opponents of the amendment acknowledged that the Secretary had no discretion to waive the one-year limit, *Id.* at 6 (discussion between Rep. Sam Gibbons and John Garson, Department of Labor), and proponents called for the need to change the "rigid" one-year rule. *Id.* at 27 (statement of Jane O'Grady, Amalgamated Clothing & Textile Workers Union, AFL–CIO). Opponents of the change contended that a longer time limit would be antithetical to the purpose of the program, which "is adjustment and the workers who are targeted for assistance are those who are immediately impacted by loss of jobs due to a current import impact problem." *Id.* at 12 (statement of Alan Wolff, Office of Special Representative for Trade Negotiations); *see also id.* at 3 (statement of Joel Segall, Department of Labor) ("Our objective is to achieve a rapid return of workers to the labor force. To accomplish this, the petitions should be filed as promptly as possible after the displacement, and the certification decisions and benefits processed rapidly"). Congress was thus fully aware of the arguments for and against relaxing the one-year rule when it failed to pass the bill.

Over the years, Congress has considered and rejected various proposals to amend the one-year rule. *See, e.g.,* H.R. 2484, 95th Cong., 1st Sess. (1977) (allowing up to 1½ years for workers who did not receive timely notice of the filing requirements); H.R. 1543, 96th Cong., 1st Sess. (1979) and S. 227, 96th Cong., 1st Sess. (1979) (allow-

---

4. The court concluded that "[p]resumably, Congress established the one-year rule both in order to encourage workers to file promptly and in order to ensure that benefits under the Act were used for purposes envisioned by the Act. Thus, when workers fail to apply timely for benefits

and so are not eligible, it is not that they are being penalized for failure to file; rather they simply are so [sic] longer within the category Congress intended to aid by this program." *Lloyd.* 637 F.2d at 1271.

ing reconsideration of denied petitions applying a 1½ year period); H.R. 2523, 3666, 4460, 5148 and 5363, 95th Cong., 1st Sess. (1977) and S. 939 and 1658, 95th Cong., 1st Sess. (1977) (retroactively changing the period to two years); H.R. 11711, 95th Cong., 2d Sess. (1978) (creating an "open season" during which excluded workers may reapply); and H.R. 4581, 95th Cong., 1st Sess. (1977), H.R. 15421, 94th Cong., 2d Sess. (1976) and H.R. 1760, 97th Cong., 1st Sess. (1981) (substituting the date specified in the certification for the present, or any other automatic cutoff date). In considering and rejecting these numerous proposals, Congress made it quite clear that it was aware that the one-year rule was being applied rigidly, resulting in the exclusion of entire groups of workers, as well as individuals, who were unaware of their eligibility for benefits within one year of their layoffs. *See Background Materials on the Trade Adjustment Assistance Programs Under Title II of the Trade Act of 1974, supra; Trade Adjustment Assistance Amendments: Hearing Before the Subcomm. on International Trade of the Senate Finance Comm. on H.R. 11711, S. 939, S. 1658, S. 3500,* 95th Cong., 2d Sess. (1978); and *Trade Adjustment Assistance Act: Hearing Before the Subcomm. on International Trade of the Senate Finance Comm. on S. 227 and H.R. 1543,* 96th Cong., 1st Sess. 117 (1979).

In light of the above, it is clear that the one-year rule, standing alone, should continue to be applied according to Congress' explicit language and implicit ratifications.

### DUTY TO INFORM

■ The question remains, however, whether Congress intended to alter the application of the one-year rule when it enacted section 2275 creating duties to provide information to workers. The general obligation of the Secretary to provide information to workers is stated in clear, broad, and apparently mandatory language: "[t]he Secretary *shall* provide *full* information to workers ..." (emphasis added). 19 U.S.C. § 2275. Unlike the earlier language

of 19 U.S.C. § 2274(c) (section 224(c) of the Trade Act of 1974), which required the Secretary to "make available, to the extent feasible, full information to workers in such industry [where an affirmative finding of injury has been made]" the new section which replaced it has rejected statutory qualifications of feasibility and limitations to certain workers. In reiterating the Secretary's responsibilities, the legislative history makes it clear that "[t]his responsibility applies to workers in any industry, not just to those in an industry subject to an affirmative finding of import injury by the ITC as under section 224(c) of existing law." H.R.Rep. No. 158, 97th Cong., 1st Sess. 268 (1981). Although the statute and legislative history set forth a role for cooperating state agencies in providing information to workers, neither the statute nor the legislative history absolve the Secretary of his ultimate responsibilities and obligations to inform workers.

It is apparent from the legislative history of section 2275, as well as that of earlier efforts to expand the Secretary's duties to provide information to workers, that Congress intended to address the problem of inadequate information about the program coupled with a rigid time limitation. The Committee on Ways and Means' explanation of the provision discussed the lack of information about the program and noted that "[a]s a result, many workers either were never aware of program benefits and procedures or became aware too late to meet deadlines for filing applications." H.R.Rep. No. 158, 97th Cong., 1st Sess. 268 (1981). Yet nowhere in the statute, nor in its legislative histories, has Congress set forth, or even provided the slightest indication, that a failure on the part of the Secretary to fulfill his duty to provide information to workers should affect in any way the strict application of the one-year rule. It is noteworthy that in an earlier bill which would have expanded the Secretary's duty to provide information to workers, the one-year rule was only temporarily subjected to an "open season" provision, and it was made clear that "the one-year limit should be maintained for the future in or-

der to encourage more timely filing of petitions and thereby enable more timely benefits following worker separation." H.R. Rep. No. 1061, 95th Cong., 2d Sess. 6 (1978).

The legislative context within which section 2275 was enacted further supports the conclusion that Congress did not intend that section to somehow open up the program to countless numbers of workers who have not meet the qualification requirements. Section 2275 was passed as part of the wide-ranging Omnibus Budget Reconciliation Act of 1981. The overall aim of that act was to restrain federal expenditures, *see* H.R.Conf.Rep. No. 208, 97th Cong., 1st Sess. 653, *reprinted in* 1981 U.S. Code Cong. & Admin. News pp. 396, 1010, and it moved toward that goal in a small way by amendments to the Trade Adjustment program that made it generally more difficult for workers to receive benefits.[5]

The court finds no indication in the language of the statute or its legislative history that Congress intended to alter the application of the one-year rule when it expanded the Secretary's statutory duty to provide information to workers. If the legislative history can be read to support any specific intention of Congress regarding a link between these two sections, it is that there should be none.

Given this legislative history, the court must conclude, as did the Ninth Circuit, that although plaintiffs present a sympathetic argument, the one-year rule must continue to be interpreted rigidly, and cannot be waived for equitable reasons. *Lloyd,* 637 F.2d at 1271. Instead, "[e]fforts to ameliorate the rule should be

directed to Congress." *Id.* Defendant's motion to dismiss is granted.

---

5. For example, the required causal link between increased imports and worker layoffs was changed from the looser standard of "contributed importantly" to the tighter "substantial cause" standard. 19 U.S.C. § 2272 (1982). *See* H.R.Conf.Rep. No. 208, 97th Cong., 1st Sess. 1001, *reprinted in* 1981 U.S. Code Cong. and Admin. News 1010, 1363. Note, however, that Congress changed the standard back to "contributed importantly" in 1983. 19 U.S.C. § 2272 (1982 & Supp. III 1985). In addition, payments

under the program were limited and tied to state unemployment insurance payments. *See id.* at 1002, *reprinted* at 1364; *see generally, Trade Adjustment Assistance for Workers, Firms, and Communities: Hearings Before the Subcomm. on Trade of the House Comm. on Ways and Means,* 97th Cong., 1st Sess. (1981); *Trade Adjustment Assistance: Hearing Before the Subcomm. on International Trade of the Senate Comm. on Finance,* 97th Cong., 1st Sess. (1981).