FORMER EMPLOYEES OF SOUTHERN TRIANGLE OIL COMPANY, Plaintiff,

v.

The UNITED STATES SECRETARY OF LABOR, Defendant.

Court No. 89–03–00158.

United States Court of International Trade.

Feb. 14, 1990.

Judgment May 8, 1990.

---

Charles Pierson, pro se.

Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., and Vanessa P. Sciarra, Winnetka, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

MUSGRAVE, Judge.

The present action was initiated by Mr. Charles Pierson, a former employee of Southern Triangle Oil Company, in the form of a letter of summons and complaint filed with the Court on March 27, 1989. Mr. Pierson alleges that he was separated from employment with Southern Triangle as a result of foreign oil imports, and on this basis he contests his exclusion from eligibility for worker adjustment assistance benefits.

Southern Triangle drills for and sells oil and natural gas. In response to a petition filed by other employees of the company on November 18, 1988, the United States Department of Labor ("Department") initiated an adjustment assistance investigation. From this investigation the Department determined that "U.S. imports of crude oil increased absolutely and relative to U.S. shipments in 1987 compared to 1986 and in the January–September period of 1988 compared to the same period of 1987." Department of Labor Certification Regarding Eligibility to Apply for Adjustment Assistance, Administrative Record, Public File, at 30. The Department further found that "[t]he majority of [Southern Triangle's] major customers increased their imports of crude oil in the January–June period of 1988 compared to the same period of 1987 and decreased purchases from Southern Triangle Oil Company." *Id.* at 31. The Department concluded that "increases of imports of articles like or directly competitive with crude oil contributed importantly to the decline in sales or production and to the total or partial separation of workers at

Southern Triangle Oil Company." *Id.* Based on these determinations, the Department certified as eligible to apply for adjustment assistance under Section 223 of the Trade Act of 1974 "[a]ll workers of Southern Triangle Oil Company, Mt. Carmel, Illinois and operating at various locations in [Illinois, Indiana, Ohio, and West Virginia] who became totally or partially separated from employment on or after November 15, 1987...." *Id.*

Mr. Pierson states in his complaint that he worked for Southern Triangle for eleven years drilling for oil on various of the company's oil rigs. Mr. Pierson listed his recent wages from the company as follows: 1981—$29,700, 1982—$25,598, 1983—$23,720, 1984—$21,308, 1985—approximately $15,000, and 1986—$3,378. Mr. Pierson states that at the time of his final, complete separation from employment with the company in September 1987 he had earned a total of $1,635 during the first two quarters of that year. Notwithstanding the certification by the Labor Department of Southern Triangle employees for eligibility for adjustment assistance, the Department of Employment Security of the State of Illinois (Mr. Pierson was working with an Illinois branch of Southern Triangle) denied adjustment assistance to Mr. Pierson, explaining, "You are not entitled to trade adjustment assistance because your last separation occurred before the impact date."

In his complaint, Mr. Pierson describes a period of irregular wage and employment levels at Southern Triangle in recent years as the company moved oil rigs out of production due to the increased import competition. He states that he was separated from employment with the company completely and finally in September 1987. The Illinois Department of Employment Security in its notification to Mr. Pierson of his ineligibility for assistance lists his separation date as 10/5/85. Whichever of these two separation dates is used, Mr. Pierson's last separation from Southern Triangle occurred before the November 15, 1987 impact date established by the Department of Labor.

Section 2273(b) of Title 19 of the United States Code, regarding certification of workers for trade adjustment assistance, states,

A certification under this section shall not apply to any worker whose last total or partial separation ... occurred—

(1) more than one year before the date of the petition on which such certification was granted, or

(2) more than 6 months before the effective date of this part.

The petition of the Southern Illinois employees was filed with the Department on November 18, 1988, and the date of Mr. Pierson's last total or partial separation from the company was more than one year before that date.

This one-year limitation has consistently been held to be an inflexible barrier which if not met by petitioners for assistance will bar their claims completely; the reason that has been given is that petitioners who fail to meet this requirement are not within the category of persons Congress intended to aid with the adjustment assistance legislation. *Lloyd v. U.S. Department of Labor*, 637 F.2d 1267 (Fed.Cir.1980).[1] In *Lloyd*, as in the present case, the petitioners before the Court were separated from employment prior to the Labor Department's stated impact deadline, and more than one year before the date on which the relevant petition had been filed. In upholding the denial of the petitioners' eligibility by the Labor Department, the Court noted that two proposed modifications of the one-year rule had failed to be finally enacted by Congress, one of them even after having been favorably reported out of committee. Based on this fact, the Court felt constrained by the apparent will of Congress to hold that the one-year limitation was an inflexible bar against any petitions that did not meet its requirements. The Court stated,

Petitioners present a sympathetic argument. But in view of the congressional purpose and history of this provision

and its proposed amendments, we must apply the one-year rule as it was enacted. Efforts to ameliorate the rule should be directed to Congress.

637 F.2d at 1271.

Such efforts were apparently so directed. In 1988 Congress enacted Public Law 100–418 which amended certain parts of the trade adjustment assistance legislation. Section 1421(a)(1)(B) of the amendment provides as follows:

(B) Notwithstanding section 223(b) of the Trade Act of 1974 [19 U.S.C. § 2273(b), the one-year rule], or any other provision of law, any certification made under subchapter A of chapter 2 of title II of such Act [19 U.S.C. § 2272] which—

(i) is made with respect to a petition filed before the date that is 90 days after the date of enactment of this Act, and (ii) would not have been made if the amendments made by paragraph (A) had not been enacted into law, shall apply to any worker whose most recent total or partial separation from the firm, or appropriate subdivision of the firm, described in [19 U.S.C. § 2272(a)] occurs after September 30, 1985.

The Labor Department's certification of the other Southern Triangle employees was made under 19 U.S.C. § 2272 as stated in the first phrase of the amendment excerpted above, and the company is thus "the firm ... described in [19 U.S.C. § 2272(a)]" for purposes of the present case, as stated in the last part of the excerpt. Congress further amended the statute as follows, in subparagraph (A) of subsection (a)(1) of the amendment, immediately preceding the subparagraph excerpted above:

Any firm, or appropriate subdivision of a firm, that engages in exploration or drilling for oil or natural gas shall be

---

1. In the context of the present case, particularly Mr. Pierson's reported income fluctuations, it is noteworthy that the Court of Appeals in *Lloyd* also stated that a reduction in salary to eighty

percent or less of the petitioner's previous average weekly salary may constitute a "partial separation" under the legislation. 637 F.2d at 1272, *citing* 19 U.S.C. § 2319(6)(B).

considered to be a firm producing oil or natural gas.

and

Any firm, or appropriate subdivision of a firm, that engages in exploration or drilling for oil or natural gas, or otherwise produces oil or natural gas, shall be considered to be producing articles directly competitive with imports of oil and with imports of natural gas.

It being clear that the Southern Triangle company and the Department's certification of the company's other employees for assistance both fall within section 1421(a)(1)(B) of the amendment, the other three requirements of that section may be applied to the present case. These requirements are as follows: (1) the certification at issue must have been made with respect to a petition filed earlier than 90 days after the enactment of the amendment, i.e., before November 23, 1988; (2) the certification must be one that would not have been made but for the amendments made by subparagraph (A) of the amendment; and (3) the worker at issue must have been most recently separated from the relevant firm, totally or partially, after September 30, 1985.

The petition pursuant to which the Southern Triangle workers were certified for benefits was filed with the Labor Department on November 18, 1988, before the statutory ninety-day period expired on November 21, 1988; therefore, the first statutory requirement is met.

The third requirement is also met here. Mr. Pierson states in his complaint that his last, complete separation from Southern Triangle occurred in September 1987, well within the statutory deadline of later than September 30, 1985. Moreover, even using the date of separation adopted by the State of Illinois in its denial of certification for Mr. Pierson, October 5, 1985, his time of separation still falls within the statutory period. As noted earlier, the courts have consistently held that the statutory time deadlines in the trade adjustment assistance legislation are inflexible. As another example, the Court of International Trade in *Virginia Washko, et al. v. United States*, 4 CIT 271 (1982) held that an action filed by workers challenging a negative adjustment assistance determination by the Secretary of Labor ("Secretary") was untimely filed and dismissed their case, where the petition was filed sixty-one days after the Secretary published his determination in the Federal Register, one day beyond the statutory limit of sixty days. Just as these time limits are absolute when missed by petitioners, so they are controlling when met by petitioners. Although only by five days, Mr. Pierson's separation date falls within the statutory period; the third requirement of the amendment is therefore fulfilled as well.

The second requirement, unlike the first and third, does not entail the calculation of specific deadlines, but instead calls for a legal analysis of subparagraph (A) of subsection (a)(1) of the 1988 amendment as it relates to the pre-amendment law. In such an analysis, it is not so much the fact-finding expertise of the agency, but rather the special competence of the courts for legal judgment that is more important.

In subparagraph (A) Congress rebuked the argument previously made by the Government and accepted by courts that workers engaged in drilling or exploration for oil were not "producing" an "article" as required by the statute to qualify for worker adjustment assistance. See, for example, *Former Employees of Zapata Offshore Co. v. United States*, 11 CIT 841, 1987 WL 14691 (1987).

The relevant language in subparagraph (A) unambiguously declares,

Any firm, or appropriate subdivision of a firm, that engages in exploration or drilling for oil or natural gas shall be considered to be a firm producing oil or natural gas.

Any firm, or appropriate subdivision of a firm, that engages in exploration or drilling for oil or natural gas, or otherwise produces oil or natural gas, shall be considered to be producing articles directly competitive with imports of oil and with imports of natural gas.

The Committee Report accompanying this legislation stated,

The purpose of this amendment is to facilitate the availability of benefits under the trade adjustment assistance program for workers employed by firms engaged in exploration or drilling for crude oil or natural gas. Omnibus Trade and Competitiveness Act of 1988, H.R.Rep. No. 576, 100th Cong., 2d Sess. 694 (1988), U.S.Code Cong. & Admin.News 1988, p. 1727.

The amendment, then, clearly extends to workers like Mr. Pierson who lose their jobs drilling for oil as a result of increases in oil imports.

The department has nevertheless argued even since the adoption of the amendment that the amendment was intended to apply only to displaced workers who were employed by firms engaged *solely* in drilling or exploration for oil or natural gas, not firms that also engage in "production" of these products. This is precisely the type of casuistic distinction that Congress rejected with the 1988 amendment, and the distinction was since soundly rejected in *Former Employees of Bass Enterprises Production Company v. United States*, 13 CIT ——, 706 F.Supp. 897 (1989).

In *Bass* the government argued that

the 1988 amendment does not apply to this case since Bass is not a separate service company. Rather, Bass *both explores for and produces* the articles under investigation.

Judge DiCarlo, who had earlier accepted the government's production—exploration distinction in *Zapata*, before the 1988 amendment, dismissed this argument, emphasizing the plain language of the amendment which changes the statute with respect to "[a]ny firm, or appropriate subdivision of a firm, that engages in exploration or drilling for oil or natural gas, *or otherwise produces oil or natural gas*". *Id.* This decision is also supported by the following statement from the House Report accompanying the amendment:

Because exploration, drilling, and production activities in the crude oil and natural gas industries *are inextricably linked,* the amendment provides that workers engaged in *exploration, drill-*

*ing or production* of either crude oil or natural gas shall be considered as *producing* either product. H.Rep. No. 576 at 694, U.S.Code Cong. & Admin.News 1988, p. 1727 (emphasis added).

Based on the unambiguous language of subparagraph (A), its accompanying legislative history, and the previous decision of this Court, it is clear that Mr. Pierson and Southern Triangle are precisely the kind of worker and company to which Congress intended the amendment to apply. Therefore, the certification of the company employees qualifies under the second requirement.

Where these three requirements are met, subparagraph (B) of the amendment commands that, "[n]otwithstanding section 223(b) of the Trade Act of 1974 [the one-year rule], *or any other provision of law* " (emphasis added), a certification within the scope of the amendment "shall apply to any worker" of the certified firm who meets the amendments' requirements. Southern Triangle is a firm within the scope of the amendment, and both the certification of its other employees and the petition and separation dates of Mr. Pierson meet the three requirements of the amendment. Therefore, Mr. Pierson is entitled by the amendment to benefits under the certification granted to his fellow workers.

The government argues that Mr. Pierson's complaint is not with the Department of Labor which certified the other Southern Triangle employees, but, rather, with the State of Illinois Department of Employment Security which failed to allow Mr. Pierson to participate in the assistance program because of the date of his separation from the company. Based on this characterization of the dispute, the government contends that this Court lacks jurisdiction over the case, and cites as support this Court's decision in *Former Employees of ITT v. Secretary of Labor*, 12 CIT ——, Slip Op. 88–121, 1988 WL 95919 (Sept. 12, 1988). This characterization of the action is inaccurate if not disingenuous.

In administering the adjustment assistance program, the Secretary of Labor is

authorized by statute to enter into agreements with "cooperating States" and "cooperating State agencies" pursuant to which agreements the cooperating State authority, "as agent of the United States", will accept applications for adjustment assistance and perform various other functions in administering the programs at the state level. 19 U.S.C. § 2311 (1988). Paragraph (d) of section 2311 prescribes the rule governing judicial review of decisions made by cooperating state authorities in administering the adjustment assistance program:

> A determination by a cooperating State agency with respect to entitlement to program benefits under an agreement is subject to review in the same manner and to the same extent as determinations under the applicable State law and only in that manner and to that extent.

The *Former Employees of ITT* case involved a cooperating state agency, the Tennessee Department of Employment Security, that was administering a trade adjustment assistance program pursuant to a certification made by the Secretary of Labor. The plaintiffs in that case, former employees of ITT, questioned the denial by the State agency of permission for the plaintiffs to participate in the program. This Court dismissed the plaintiffs' claim, however, because the claim had not been filed within the statutorily required period of sixty days from the date of the Secretary's publication of notice of the Labor Department's determination in the case. While the Court dismissed the case on this basis, it also briefly mentioned that under section 2311(d) the plaintiffs' challenge to the actions of the State agency were not properly before the Court of International Trade.

While Mr. Pierson does challenge the failure of the State administering authority to allow him to participate in the Federally-authorized adjustment assistance program at issue, as did the plaintiffs in *ITT*, (and while the plaintiffs in both cases additionally disagreed with the particular "impact dates" derived by the Labor Department) there is a critical distinction between the two cases: *ITT* did not involve the recently-enacted retroactivity amendment applicable to workers in the oil and gas industry, such as Mr. Pierson. While Mr. Pierson disagrees with the failure of the Illinois administering agency to allow him to participate in the adjustment assistance program for former Southern Triangle employees, his real complaint in this case is clearly with the U.S. Labor Department.

It was indeed the Illinois Department of *Employment Security* that denied Mr. Pierson assistance under the program, but it did so because under the terms of the Labor Department's certification in this case he in fact did *not* qualify for assistance. Nevertheless, as was shown above, Mr. Pierson *does* qualify for participation in the program under the recently-enacted retroactive provision applicable to oil and gas workers. The administrative record in this case, moreover, suggests that the Labor Department was not unaware of this fact. In the original version of its certification of eligibility of Southern Triangle employees to apply for worker adjustment assistance, dated January 31, 1989, the Department made this certification "[i]n accordance with the provisions of the Act *and the retroactive provisions of Section 1421(a)(1)(B) of the Omnibus Trade and Competitiveness Act of 1988*" (emphasis added). Following this document in the record, however, is a "corrected copy" of the certification. The only noticeable "correction" in this latter version is the deletion of that part of the above quoted phrase referring to the retroactive provisions of the Act. In its final, "corrected" form, then, the certification merely states that it is "[i]n accordance with the provisions of the Act"; all reference to the retroactive provision is unexplainedly deleted.

It is, as noted, the participating State agencies that administer the worker adjustment assistance programs at the operational level. But these agencies administer the programs *as formulated by the Department of Labor* (indeed, in the language of the statute, "as agent[s] of the United States"). It is in turn the responsibility of the Department of Labor, where assistance is warranted, to so formulate the programs as to implement the will of Congress in

enacting the trade adjustment assistance legislation. If the Department formulates the particular program in a manner contrary to the governing statute and Congressional intent, then the State agency, bound by the parameters of the Department's Certification, will be bound to administer the program in that same manner.

The Department so formulated its Certification in this case. The Certification states that Southern Triangle and its former employees were engaged in the business of drilling for, extracting, and selling crude oil and natural gas. The retroactivity amendment mandates that any certification of employees of such a company "shall apply to" any worker who qualifies under the amendment, "[n]otwithstanding section 223(b) [the one-year rule] ... *or any other provision of law.*" The broad, sweeping language of this highlighted portion demonstrates the intent of Congress that if a worker qualifies under the specific, strictly limited criteria of the amendment, as Mr. Pierson was shown to, *no provision of law,* whether the one-year rule, the impact date rule, or otherwise, should exclude the worker from participation in the program. Therefore, the retroactive provisions of the 1988 legislation clearly apply in this case and would extend the coverage of the present Certification to Mr. Pierson. After deleting from its Certification all reference to the retroactive provisions, the Department can not now exculpate itself by referring Mr. Pierson to the State agency that is bound to administer that very Certification according to the parameters stated therein.

The Department has contributed very little to these proceedings before this Court. While it was required by the Rules of the Court to file an answer within sixty days of the filing of Mr. Pierson's complaint, the Department filed no answer nor any other communication regarding this action for seven months after the complaint was filed, reportedly because it "overlooked" this requirement. When the Department did respond at that late date, at the request of the Court, its response was in the form of a motion to dismiss the case because Mr. Pierson had overlooked the posting of a twenty-five dollar filing fee with his complaint. The Court, moreover, was forced to request two times the filing by the government of a proposed protective order pursuant to which Mr. Pierson could gain access to the entire administrative record in his action.

These circumstances are detailed more fully in the Memorandum Order of November 21, 1989 to which the Court finally resorted to obtain the proposed protective order. The Court stated in that order its belief that it surely was not the intent of Congress in enacting the adjustment assistance legislation and the provisions therein for judicial review for applicants to endure such delay in the resolution of their applications as Mr. Pierson has in this case. This belief is further reinforced by the actions of Congress in amending the applicable legislation to protect workers in the oil and gas industries. Because of these considerations, the Court urgently desires that the Department of Labor again correct its Certification in this case to make it clear to the State administering authorities that the retroactive provisions of the 1988 Trade Act apply to the certification of eligibility to apply for worker adjustment assistance of the former employees of Southern Triangle, including Mr. Charles Pierson.

Accordingly, the Secretary of Labor's determination is vacated and the action is remanded. The Secretary is directed to prepare and issue a final determination consistent with the foregoing opinion within thirty days of the date of this opinion, and, through counsel, to provide the Court with a copy of the revised determination within five days of its issuance.

SO ORDERED.

### JUDGMENT

In accordance with this Court's Memorandum Opinion and Order in this action of February 14, 1990, 14 CIT ——, Slip Op. 90–16, and with the revised final determination filed by the Department of Labor pursuant to that opinion, it is hereby

ORDERED, ADJUDGED and DECREED that judgment be entered for plaintiffs.