Donna KELLEY, et al., Plaintiffs,

v.

SECRETARY, UNITED STATES
DEPARTMENT of LABOR,
Defendant.

No. 85–03–00437.

United States Court of
International Trade.

April 2, 1986.

Donna Kelley, pro se.

Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Platte B. Moring, III, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## Opinion

RESTANI, Judge:

Defendant moves for clarification of the court's opinion of December 30, 1985, 626 F.Supp. 398. In that opinion this court remanded for further consideration the Secretary of Labor's (Secretary's) denial of a petition for trade adjustment assistance filed pursuant to section 221(a) of the Trade Act of 1974, as amended (Act).[1] 19

---

1. The petition alleged that increased imports of articles like or directly competitive with the cotton and synthetic sewing thread produced at the American Thread Company's (American Thread's) plant in Tallapoosa, Georgia (Tallapoosa plant), contributed importantly to the worker separations or threat of worker separations at the Tallapoosa plant.

The requirements for eligibility to apply for trade adjustment assistance are set forth in § 222 of the Act which provides:

The Secretary shall certify a group of workers as eligible to apply for adjustment assistance under this part if he determines—

(1) that a significant number or proportion of the workers in such workers' firm or an appropriate subdivision of the firm have become totally or partially separated, or are threatened to become totally or partially separated,

(2) that sales or production, or both, of such firm or subdivision have decreased absolutely, and

(3) that increases of imports of articles like or directly competitive with articles produced by such workers' firm or an appropriate subdivision thereof contributed importantly to such total or partial separation, or threat thereof, and to such decline in sales or production.

For purposes of paragraph (3), the term "contributed importantly" means a cause which is

U.S.C. § 2271(a) (1982). Clarification would appear useful.

A question has been raised as to whether data sheets in the administrative record, upon which the Secretary apparently based his decision, represent sales figures of industrial thread[2] from the Tallapoosa plant alone or from American Thread as a whole. Defendant asserts that these data sheets give sales information from the entire American Thread Company. This claim is not supported by the record. Each of these data sheets is headed "Plant" with the word "Tallapoosa" typed below, thereby indicating that they are plant specific and do not represent company-wide sales. If these data sheets do in fact include sales from various plants, the administrative record should be supplemented to so indicate. If, on the other hand, they are from the Tallapoosa plant alone, the record must be supplemented with data from any other plants operated by American Thread that produce the article in question.[3] Even assuming that the data sheets in question do represent company-wide sales, they are insufficient to support the Secretary's denial of plaintiffs' petition.

■ Significant worker separations, or the threat thereof, within the meaning of the statute, 19 U.S.C. § 2272(1) (1982 & Supp. I 1983) (*supra* note 1), took place at the Tallapoosa plant, in industrial thread production, during both 1983 and 1984. *See* 29 C.F.R. § 90.2 (1984) (defining "significant number or proportion of the workers"). *Accord* S.Rep. No. 1298, 93d Cong.2d Sess. 133, *reprinted in* 1974 U.S. Code Cong. & Ad.News 7186, 7275. From the record, it is evident that the Secretary considered the period from 1982 through the first eight months of 1984 as relevant for comparison in reviewing plaintiffs' petition. Having so concluded, the Secretary was obliged to conduct the investigation within this period in accordance with law. The record indicates that corporate sales of industrial thread decreased in quantity by twelve percent from 1982 to 1983.[4] Assuming that the data sheets referred to earlier represent company-wide sales of industrial thread, data would appear to have been obtained from American Thread customers accounting for only six percent and eight percent (approximately) of corporate industrial thread sales for 1982 and 1983, respectively. It is of even greater significance that, according to the record before the court, those companies from which survey data regarding purchases of imports was obtained, and that also decreased purchases, accounted for approximately three percent of American Thread's net decline in

important, but not necessarily more important than any other cause.
19 U.S.C. § 2272 (1982 & Supp. I 1983).

2. Defendant uses the term "industrial thread" as a synonym for the term "cotton and synthetic sewing thread." In the absence of information to the contrary, the court will equate the two.

3. The administrative record, in a press release from American Thread, indicates that the Tallapoosa plant was closed due to a need to consolidate and that the consolidation was made necessary by "*increasing imports of* both apparel and *thread.*" Administrative Record at 4 (emphasis added). The need to consolidate should not be viewed as a cause of worker separations distinct from increased imports of articles like or directly competitive with those under consideration, if such imports did in fact contribute importantly to the need to consolidate. If, as defendant now asserts, the articles in question are produced at more than one plant operated by American Thread, and the Tallapoosa plant was closed due to a need to consolidate, survey data from Tallapoosa alone would be insufficient to provide substantial evidence from which to eliminate increased imports of articles like or directly competitive with those produced by the petitioning workers, as contributing importantly to the decline in sales or production, and to the worker separations in question.

4. According to the record, the value of corporate industrial thread sales between 1982 and 1983 increased by 4%. Apparently based on value rather than quantity, sales during this period are characterized in the record as having increased. There is no indication, however, that the Secretary viewed this "increase" in sales as a failure to satisfy one of the statutory requirements of eligibility to apply for trade adjustment assistance. *See* 19 U.S.C. § 2272(2) (1982 & Supp. I 1983) (*supra* note 1). In any event, the court doubts that, within the meaning of the statute, it is appropriate to classify sales as increasing where sales decrease in quantity, yet increase in value.

sales of industrial thread during this period. The court does not propose to establish a specific level of sales or of a sales decline that must be accounted for in the record. The samplings in the record are so small, however, that they simply cannot provide sufficient support for the Secretary's denial of eligibility to apply for trade adjustment assistance, in the context of the information provided thus far. *See Local 167, International Molders and Allied Workers' Union v. Marshall*, 643 F.2d 26, 31 (1st Cir.1981) (survey accounted for 49% and 68% of sales during relevant period); *United Glass and Ceramic Workers v. Marshall* 584 F.2d 398, 403 (D.C.Cir.1978) (survey accounted for 21.5% and 38.3% of sales during relevant period); *Stipe v. United States Department of Labor*, 9 CIT ——, Slip Op. 85–112 at 4 (October 25, 1985) (survey accounted for 94.9% and 82.4% of sales decline during relevant period); *Estate of Finkel v. Donovan*, 9 CIT ——, 614 F.Supp. 1245, 1250–51 (1985) (customers responding to survey accounted for "substantial percentage" of lost sales during relevant period). The figures noted above in the case at bar obviously do not approach even the lowest figures in the above cited cases.

■ The failure to consider data from customers accounting for more than a slight fraction of American Thread's total sales of the article in question during the 1982–1983 period was repeated by the Secretary in his comparison of the first eight months of 1983 with the same months of 1984. In addition, in Slip Op. 85–132, this court noted that the Secretary should have included in the survey, or indicated on the record the reason for failing to so include, the company that had decreased its purchases of industrial thread during this period by a greater amount than did any other customer of American Thread for which data was given in the record. Defendant questions the relevance of the failure to include in the administrative record survey data from this company, which gave its address as being in Canada. Presumably, trade adjustment assistance is available only if imports *into the United States* con-

tribute importantly to worker displacements. Although survey data from a company operating totally outside the United States thus would appear to be irrelevant, this would not be the case if, for example, the company, although headquartered or having a mailing address outside the United States, operates plants in the United States to which it imports articles like or directly competitive with those under investigation. Without such knowledge about the company in question, the court is unable to rule on the relevance of data from that company.

Finally, the court notes that if the Secretary provides substantial evidence on the record to support his denial of the petition, he need not give an alternative explanation of what was the precise cause of the worker separations in question. An explanation of any such alternative cause of the consolidation would provide a clearer picture as to what occurred and would bolster the Secretary's conclusion.

Defendant shall comply with the remand order contained in 626 F.Supp. 398, within sixty days after the date of this memorandum, as ordered by the court on February 28, 1986.