**FORMER EMPLOYEES OF ASARCO'S AMARILLO COPPER REFINERY, Plaintiffs,**

**v.**

**UNITED STATES, Defendant.**

**Court No. 87–03–00529.**

United States Court of International Trade.

Nov. 2, 1987.

Mary E. Borchardt, pro se.

Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, Dept. of Justice, Commercial Litigation Branch, Platte B. Moring, III, Washington, D.C. for defendant.

DiCARLO, Judge:

Plaintiffs, former employees of Asarco's Amarillo Copper Refinery (Refinery), challenge the determination of the Secretary of Labor (Secretary) that they are ineligible for trade adjustment assistance under section 223 of the Trade Act of 1974 (Act), 19 U.S.C. § 2273 (1982).

After reviewing the administrative record and the arguments of the parties, the Court holds that the Secretary's denial of certification is supported by substantial evidence and in accordance with law. The Secretary's determination is affirmed.

Plaintiffs were salaried employees of a copper refinery that produces refined copper cathodes. The Refinery reduced its workforce by laying off plaintiffs, but it did not stop production. Plaintiffs petitioned for adjustment assistance on the grounds that increasing imports of low cost copper caused their separation from the Refinery.

The Secretary is required to certify petitioning workers as eligible for assistance if he determines, in accordance with section 222 of the Act, 19 U.S.C. § 2272 (1982 & Supp.III 1985):

> (1) that a significant number or proportion of the workers in such workers' firm or an appropriate subdivision of the firm have become totally or partially separated, or are threatened to become totally or partially separated,
>
> (2) that sales or production, or both, of such firm or subdivision have decreased absolutely, and
>
> (3) that increases of imports of articles like or directly competitive with articles produced by such workers' firm or an appropriate subdivision thereof contributed importantly to such total or partial separation, or threat thereof, and to such decline in sales or production.

The Secretary denied plaintiffs' petition, finding that the Refinery's sales and production of refined copper cathodes did not decline as required by section 222(2) of the Act. *Determinations Regarding Eligibility To Apply for Worker Adjustment Assistance; Edison Battery, Products et al.,* 51 Fed.Reg. 43,482, 43,482 (Dec. 2, 1986). The Secretary's determination was based on a finding that "[s]ales and production of refined copper cathodes produced at ASARCO, Incorporated, Amarillo, Texas [Refinery] increased in 1985 compared to 1984 and in the first three quarters of 1986 compared to the same period in 1985." R.Doc. 12.

Plaintiffs requested administrative reconsideration of the Secretary's denial. R.Doc. 14. This request was dismissed on the basis that plaintiffs did not show that the Secretary erred in denying certification for adjustment assistance nor did plaintiffs furnish new evidence which made reconsideration of the denial necessary. R.Doc. 15. The letter dismissing plaintiffs' request also stated: "The Department's decision was based primarily on the fact that the salaried workers at the Amarillo Copper Refinery did not produce an article within the meaning of the Trade Act of 1974 but

provided support services to the copper refinery." *Id.*

In reviewing a decision of the Secretary denying a petition for certification of eligibility for trade adjustment assistance benefits, the Court, pursuant to section 284 of the Trade Act of 1974, 19 U.S.C. § 2395(c) (1982), must determine whether the Secretary's decision is supported by substantial evidence contained in the administrative record and in accordance with law. *Woodrum v. Donovan*, 5 CIT 191, 193, 564 F.Supp. 826, 828 (1983), *aff'd sub. nom. Woodrum v. United States*, 2 Fed.Cir. (T) 82, 737 F.2d 1575 (1984); *United Steelworkers of Am. v. Donovan*, 10 CIT ——, 632 F.Supp. 17, 20 (1986). The "findings of fact by the Secretary ... if supported by substantial evidence, shall be conclusive" on the Court. Trade Act of 1974, § 284(b), 19 U.S.C. § 2395(b) (1982). There is also the "further requirement that the rulings made on the basis of those findings be in accordance with the statute and not be arbitrary or capricious, and for this purpose the law requires a showing of reasoned analysis." *International Union, United Auto., Aerospace and Agricultural Implement Workers of Am. v. Marshall*, 584 F.2d 390, 396 n. 26 (D.C.Cir. 1978); *see* 19 U.S.C. § 2273(c) (1982).

Plaintiffs' challenge to the Secretary's determination presents two questions: (1) whether the finding that the Refinery's sales and production had not "decreased absolutely" within the meaning of section 222(2) of the Act is in accordance with law, and (2) whether the determination that plaintiffs had not "produced" refined copper cathodes within the meaning of that term as used in section 222(3) of the Act is supported by substantial evidence.

The Secretary determined that sales and production at the Refinery had not "decreased absolutely" within the meaning of section 222(2) of the Act because the number of refined copper cathodes sold and produced by the Refinery increased rather than decreased during the relevant period. Plaintiffs do not dispute the factual findings, but claim that the determination is not in accordance with law because the

Secretary considered only the "quantity" of refined copper cathodes sold and not the "value" of such sales.

Plaintiffs assert that increasing imports of low cost copper depressed the price of copper in the United States and argue that such price depression resulted in a decline in the "value" of sales made by the Refinery. If the Secretary had evaluated "value" of sales rather than only "quantity" of sales, plaintiffs say, the Secretary would have found that sales had "decreased absolutely" within the meaning of section 222(2) of the Act.

Section 222(2) of the Act directs the Secretary to determine whether "sales or production, or both of [a petitioning] firm or subdivision have decreased absolutely." The Court finds that a literal reading of the section does not answer the question of whether the Secretary is to consider the number of articles sold, the value of such sales made, or both, when determining whether sales have "decreased absolutely" within the meaning of the section. When a literal reading of a disputed provision in a statute does not answer the question presented, "the court may look to the entire statutory scheme and to the provision's legislative history in an effort to resolve the ambiguity." *Woodrum*, 5 CIT at 194, 564 F.Supp. at 829 (citing *Massachusetts Financial Services, Inc. v. Securities Investor Protection Corp.*, 545 F.2d 754, 756–57 (1st Cir.1976)).

In doing so, the Court must accord substantial weight to the interpretation put on the statute by the agency charged with its administration. *Kelley v. Secretary, United States Dep't of Labor*, 812 F.2d 1378, 1380 (Fed.Cir.1987) (and cases cited therein). "Though a court may reject an agency interpretation that contravenes clearly discernible legislative intent, its role when that intent is not contravened is to determine whether the agency's interpretation is 'sufficiently reasonable.'" *Id.* (quoting *American Lamb Co. v. United States*, 785 F.2d 994, 1001 (Fed.Cir.1986)). "[A] court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the ad-

ministrator of an agency." *Kelley,* 813 F.2d at 1380 (quoting *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984); *United States v. Federal Ins. Co.,* 805 F.2d 1012, 1017 (Fed.Cir.1986)).

Plaintiffs argue that the Secretary's interpretation contravenes clear legislative intent, asserting that through the Trade Act of 1974 Congress intended to expand the coverage of the trade adjustment assistance provisions by replacing the original framework created by the Trade Expansion Act of 1962, §§ 301–61, Pub.L. No. 87–794, 76 Stat. 872, 883–901 (repealed 1975). According to plaintiffs, Congress must have been aware, through its understanding of economic principles and the realities of the market place, that quantity alone of sales, without value, would not be an accurate means of assessing the impact of imports on a firm or subdivision. Plaintiffs suggest that although a firm or subdivision may increase production for various legitimate business reasons, such firm or subdivision can still be injured by imports that reduce prices for the product and thus decrease the net return on sales even where the number of sales of the product actually increases.

The legislative history of the trade adjustment assistance provisions of the Act does indicate that Congress sought to expand worker recovery by replacing the original provisions of the Trade Expansion Act of 1962. *See* S.Rep. No. 1298, 93d Cong., 2d Sess. 131–32, *reprinted in* 1974 U.S.Code Cong. & Admin.News 7186, 7273–74; H.R.Rep. No. 571, 93d Cong., 1st Sess. 52–53 (1973). One stated purpose for enacting the Act implementing the replacement provisions is "to provide adequate procedures to safeguard American industry and labor against unfair or injurious import competition, and to assist industries, firm[s], workers, and communities to adjust to changes in international trade flows." § 2 of the Act, 19 U.S.C. § 2102(4) (1982). But as plaintiffs recognize, Congress in creating the replacement provisions did not expect coverage to be universal and intended to limit worker assistance pursuant to

the language and intent of the Act. *See* petitioners' reply brief at 9 (citing *United Shoemakers of Am. v. Bedell,* 506 F.2d 174, 187 (D.C.Cir.1974)); *see also Pemberton v. Marshal,* 639 F.2d 798, 800 (D.C.Cir. 1981).

With respect to section 222(2) of the Act specifically, Congress does not offer guidance on how to assess the limitation requiring an absolute decrease in sales and production at the subject firm or subdivision. The legislative history includes only the comment that "[i]n addition to requiring that a significant number of proportion of the workers in a firm have become or are threatened to become totally or partially separated, sales or production, or both, of the affected firm or subdivision would have to decline on an absolute basis with the increased imports contributing importantly to the decline." S.Rep. No. 1298 at 133, 1974 U.S.Code Cong. & Admin.News at 7275; H.R.Rep. No. 571 at 53.

The Court will not speculate, as plaintiffs have, upon what Congress did or did not understand concerning economics and the realities of the market place. The Court may only reject a reasonable agency interpretation that contravenes "clearly discernible legislative intent," but on the issue presented the Court is unable to discern a clear intent of Congress.

■ The Secretary's interpretation of section 222(2) of the Act is that sales have not "decreased absolutely" within the meaning of that section when there is, as in this case, an increase in the number of articles sold by the firm or subdivision. The Court finds this interpretation of the section sufficiently reasonable to preclude it from substituting its judgment for that of the Secretary.

■ Plaintiffs may be correct in their claim that they lost their jobs because the net return on sales decreased due to increasing low cost imports depressing the domestic price of copper. As stated earlier, however, the Act was not intended to provide trade adjustment assistance to all workers who lose their jobs due in some way to imports. The Court may not substi-

tute an interpretation of section 222(2) of the Act which might lead to relief for plaintiffs when the Secretary has made a reasonable interpretation of that section which, unfortunately, results in plaintiffs' ineligibility for assistance.

██ Plaintiffs contend that regardless of whether the Secretary's interpretation is reasonable, it cannot be accepted because it would be a change in administrative practice without an explanation. Plaintiffs say the Secretary's forms for filing a petition include a column for value and argue that the Secretary has used value as a measure in past investigations, citing *Local 167 v. Marshall*, 643 F.2d 26, 28 (1st Cir.1981), *ACTWU Local 1627 v. Donovan*, 7 CIT 212, 213–14, 587 F.Supp. 74, 75 (1984); *Kelley v. Secretary, United States Dept. of Labor*, 10 CIT ——, 633 F.Supp. 1374, 1375 (1986).

The cases plaintiffs cite do not indicate that the Secretary used value of sales to determine whether the workers petitioning for trade adjustment assistance met the requirements of section 222(2) of the Act. Also, in those cases there was not an increase in the number of the investigated articles sold coupled with an alleged decrease in the total value of the sales made as in the present action. Although the Secretary's forms request data on value of sales, this does not mean the Secretary has used or must use such information in making the determination under section 222(2) of the Act. The Court finds no support for the view that the Secretary's practice has been to use value in making a determination with respect to this section and thus finds no change in administrative practice on the part of the Secretary that requires explanation.

██ The Secretary's determination that the Refinery's sales and production of refined copper cathodes had not "decreased absolutely" as required by Section 222(2) of the Act is supported by substantial evidence and is according to law. Although plaintiffs also argue that there is insubstantial evidence on the record to support a determination that they had not "produced" refined copper cathodes within the meaning of that term as used in section 222(3) of the Act, the Court finds that it need not reach this issue since the Secretary's denial based on section 222(2) of the Act is not in error. Plaintiffs must meet all three requirements of section 222 of the Act before they are eligible for trade adjustment assistance. *See, e.g., Abbott v. Donovan*, 8 CIT 237, 239, 596 F.Supp. 472, 474 (1984).

The Secretary's denial of certification for trade adjustment benefits under the Act is affirmed. The action is dismissed. Judgment will be entered accordingly.