**FORMER EMPLOYEES OF BASS ENTERPRISES PRODUCTION COMPANY, Plaintiffs,**

v.

**UNITED STATES, Defendant.**

**Court No. 87–04–00584.**

United States Court of International Trade.

May 27, 1988.

Charles E. Williams, pro se.

John R. Bolton, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, U.S. Dept. of Justice (Elizabeth C. Seastrum); U.S. Dept. of Labor (Gary Bernstecker), Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

DiCARLO, Judge:

Plaintiffs, former employees of Bass Enterprises Production Company (Bass), challenge a determination of the Office of Trade Adjustment Assistance of the United States Department of Labor (Labor) that they are ineligible for trade adjustment assistance benefits under section 223 of the Trade Act of 1974, 19 U.S.C. § 2273 (1982). After reviewing the administrative record and the arguments of the parties, the Court finds that Labor denied plaintiffs their due process in not giving actual notice of the 10–day period in which to request a hearing on their petition for adjustment assistance.

## BACKGROUND

### A. *Petition for Adjustment Assistance*

Three employees, on behalf of geologists and geophysicists at Bass, obtained a United States Department of Labor petition for adjustment assistance and mailed it to the Texas Employment Commission which received it on November 10, 1986. R. 2; Exhibit A of Defendant's Brief. The Texas Employment Commission forwarded the petition to Labor, at the address listed on reverse side of the petition, where it was received on November 21, 1986. Exhibit A of Defendant's Brief. Labor deemed the petition to have been filed on November 10, 1986, and initiated an investigation of the workers' claims. R. 1, 4, 6–7, 28; Exhibit A of Defendant's Brief; *Investigations Regarding Certifications of Eligibility to Apply for Worker Adjustment Assistance,* 51 Fed.Reg. 43,484, 43,484–85 (Dec. 2, 1986). The petition is dated August 16, 1986, but a notation on the bottom of the petition indicates that it is a copy of another petition which was apparently lost in transit. R. 2; Exhibit A of Defendant's Brief.

The petition states that due to increased imports of oil and natural gas, separations of a number of workers began in September of 1985. R. 2. The petition declares that "[i]ncreased imports of oil and gas have led to a major price decline and subsequent loss of revenue of Bass Enterprises and the termination of highly paid workers due to decreased exploratory activity." R. 2.

### B. *Denial of Trade Adjustment Assistance*

On February 2, 1987, Labor denied the employees' petition for adjustment assistance, finding they did not satisfy the requirements of section 223 of the Act, 19 U.S.C. § 2273 (1982). R. 39–41. Labor notified plaintiffs of the denial on the next day using form letters which stated that "at least one of the group eligibility requirements of Section 222 of the Trade Act had not been met." R. 42–45. Notice of the denial was published in the *Federal*

*Register* on April 17, 1987, stating that Labor's investigation revealed that the eligibility requirement in 19 U.S.C. § 2272(2) had not been met in that sales or production did not decline during the relevant period as required for certification. *Bass Enterprises Production Co.; Fort Worth, TX; Negative Determination Regarding Eligibility To Apply for Worker Adjustment Assistance,* 52 Fed.Reg. 12,622 (Apr. 17, 1987). The *Federal Register* notice also implied that Labor made a finding that plaintiffs did not satisfy the eligibility requirement of 19 U.S.C. § 2272(3).

### C. Request for Rehearing

Plaintiffs requested administrative reconsideration of the Secretary's negative determination, R. 46–84, which Labor denied on the basis that plaintiffs did not demonstrate any error or misinterpretation of law or fact to justify reconsideration under 29 C.F.R. § 90.18(c). *Bass Enterprises Production Co.; Fort Worth, TX; Negative Determination Regarding Application for Reconsideration,* 52 Fed.Reg. 9968 (Mar. 27, 1987). This *Federal Register* notice also stated that Labor's denial of adjustment assistance is based on the fact that "none of the group eligibility requirements set [forth] in section 222 of the Trade Act [as amended, 19 U.S.C. § 2272 (1982 & Supp.IV 1986)] were met." 52 Fed.Reg. at 9968.

### DISCUSSION

■ This Court must determine whether Labor's decision to deny adjustment assistance benefits is supported by substantial evidence contained in the administrative record and is in accordance with law. 19 U.S.C. § 2395 (1982); *Woodrum v. Donovan,* 5 CIT 191, 193, 564 F.Supp. 826, 828 (1983), *aff'd,* 2 Fed.Cir. (T) 82, 737 F.2d 1575 (1984). Labor's findings of fact are conclusive on the Court only if they are supported by substantial evidence on the administrative record as a whole. 19 U.S. C. § 2395(b) (1982). There is also a "further requirement that the rulings made on the basis of those findings be in accordance with the statute and not be arbitrary or capricious, and for this purpose the law requires a showing of reasoned analysis." *Former Employees of Homestake Mining Co. v. Brock,* 12 CIT ——, Slip Op. 88–41, at 5 (Mar. 28, 1988) [available on WESTLAW, 1988 WL 30652]; *Former Employees of Zapata Offshore Co. v. United States,* 11 CIT ——, Slip Op. 87–124, at 3–4 (Nov. 9, 1987) [available on WESTLAW, 1987 WL 14691]; *Chapman v. Donovan,* 9 CIT 545, 547 (1985) (quoting *International Union, United Auto., Aerospace and Agricultural Implement Workers of Am. v. Marshall,* 584 F.2d 390, 396 n. 26 (D.C.Cir. 1978)); *see* 19 U.S.C. § 2273(c) (1982).

### A. Date of the Petition

■ The Court first considers the threshold claim concerning the date of the petition for adjustment assistance.

Plaintiffs' petition for adjustment assistance is dated August 16, 1986, but it was not received at Labor until November 21, 1986. R. 2; Exhibit A of Defendant's Brief. Plaintiffs claim that the Texas Employment Commission provided them with an adjustment assistance petition and instructed them to mail the petition to the Texas Employment Commission's office in Fort Worth, Texas rather than to Labor's address as stated on the petition. *Plaintiffs' Reply Brief,* at 28–30. The Fort Worth office then forwarded the petition to Texas Employment Commission's Austin office, which forwarded it to Labor, which deemed the petition to have been filed on November 10, 1986, the date it was received at the Texas Employment Commission. *Id.;* Exhibit A of Defendant's Brief.

Benefits are available to only those workers separated from their firm or appropriate subdivision within one year preceding the date of a petition for trade adjustment assistance. 19 U.S.C. § 2273(b)(1) (1982); *Former Employees of Levolour Lorentzen v. United States Sec'y of Labor,* 12 CIT ——, Slip Op. 88–50 (Apr. 28, 1988) [available on WESTLAW, 1988 WL 39929]; *Former Employees of Westmoreland Mfg. Co. v. United States,* 11 CIT ——, 650 F.Supp. 1021, 1023 (1986). Plaintiffs claim that Labor should have used the

August 16, 1986 petition date to mark the period of review, even though the petition states that the original was lost in transit. R. 2. Using the August date would allow Labor to consider jobs lost in September of 1985. However, Labor's regulations clearly provide that the date of filing of a petition "means the date on which petitions and other documents are *received* by the Office of Trade Adjustment Assistance, Employment and Training Administration, United States Department of Labor," and the "date of the petition" is defined as "the date thereon, but which in no event shall be more than 30 days before the date of filing." 29 C.F.R. § 90.2 (emphasis added). Labor deemed the date of filing of the petition to be November 10, when the Texas Employment Commission received the plaintiffs' petition. Labor would have violated its regulations if, as plaintiffs urge, it had deemed the date of the petition to be August 16, 1986, because that date is more than 30 days prior to the date when Labor received the petition. An agency's interpretation of its own regulation is entitled to substantial deference unless it is plainly erroneous or inconsistent with the regulation. *Mullins Coal Co. v. Director, Office of Workers' Compensation Programs, United States Dep't of Labor,* —— U.S. ——, 108 S.Ct. 427, 440, 98 L.Ed.2d 450 (1987). Labor's construction of its regulations is reasonable because plaintiffs could otherwise back date petitions to unfairly take advantage of trade reports favorable to their petitions. Labor's determination that the date of the petition is November 10, 1986 is reasonable and is in accordance with law.

## B. *Actual Notice*

■ Plaintiffs make an important claim that Labor's failure to provide them with actual notice of the 10–day period to request a public hearing denied them due process. Plaintiffs state that they live in an area of west Texas where there are two law libraries, one county library, and one junior college with a library, but that none of the four libraries subscribe to the *Federal Register. Plaintiffs' Reply Brief,* at 32.

This Court has repeatedly stated that as a matter of due process, Labor should provide *pro se* petitioners with actual notice of the 10–day period in which to request a hearing. *Former Employees of Homestake Mining,* 12 CIT at ——, Slip Op. 88–41, at 13–15; *Miller v. Donovan,* 9 CIT 473, 476–79, 620 F.Supp. 712, 716–17 (1985); *Estate of Finkel v. Donovan,* 9 CIT 374, 378–79, 614 F.Supp. 1245, 1246–49 (1985). In each of those cases, however, plaintiffs could not demonstrate prejudice by the lack of a public hearing which would require remand.

Defendant contends that there is no requirement to provide actual notice to *pro se* litigants under *Kelley v. Secretary, United States Dep't of Labor,* 812 F.2d 1378 (Fed. Cir.1987). The Court agrees with plaintiffs that *Kelley* is limited to the strict jurisdictional basis of actions in this Court and does not apply to Labor's duty to give notice of the 10–day period in which to request a public hearing. *See Former Employees of Homestake Mining,* 12 CIT at ——, Slip Op. 88–41, at 13. This Court again affirms that under the previous decisions of this Court, Labor should provide actual notice of the 10–day period in which to request a public hearing, particularly where *pro se* petitioners are involved.

In this case, Labor's determination will be set aside if the failure to provide actual notice of the 10–day period to request a hearing prejudiced plaintiffs. *See id.* at ——, Slip Op. 88–41, at 14.

## C. *Did the Failure to Provide Actual Notice Prejudice Plaintiffs?*

■ Plaintiffs complain that Labor's failure to provide actual notice of the 10–day period to request a hearing denied them an opportunity to establish their eligibility for certification in that they would have proven at a hearing that (1) they were production workers and that a significant number of the production workers at Bass were separated or were threatened with separation, (2) Bass' sales and production of natural gas decreased absolutely in terms of volume and value, while Bass' sales and production of crude oil decreased absolutely in

terms of value, and (3) increased imports of oil and natural gas contributed importantly to the worker separations and declines in sales and production. Plaintiffs claim that a hearing would have had a definite effect on the ensuing investigation and final outcome.

In order to certify a group of workers for adjustment assistance, the Secretary of Labor must determine that they meet three criteria:

(1) that a significant number or proportion of the workers in such workers' firm or an appropriate subdivision of the firm have become totally or partially separated, or are threatened to become totally or partially separated,

(2) that sales or production, or both, of such firm or subdivision have decreased absolutely, and

(3) that increases of imports of articles like or directly competitive with articles produced by such workers' firm or an appropriate subdivision thereof contributed importantly to such total or partial separation, or threat thereof, and to such decline in sales or production.

19 U.S.C. § 2272 (1982 & Supp.IV 1986).

Plaintiffs were given actual notice by letter that at least one eligibility requirement had not been established. R. 42–45. The *Federal Register* notice states that Labor denied benefits to plaintiffs because 19 U.S.C. § 2272(2) had not been met. 52 Fed.Reg. at 12,622. The same notice also implies that benefits were denied because 19 U.S.C. § 2272(3) had not been met. 52 Fed.Reg. at 12,622. The denial of the request for rehearing states that none of the requirements had been met, thus adding a negative finding under 19 U.S.C. § 2272(1). 52 Fed.Reg. 9968. Labor's apparent uncertainty in stating the reason for denying benefits suggests the absence of the reasoned analysis which the law requires. *See Former Employees of Homestake Mining,* 12 CIT at ——, Slip Op. 88–41, at 5; *Former Employees of Zapata Offshore,* 11 CIT at ——, Slip Op. 87–124, at 3–4; *Chapman,* 9 CIT at 547.

While it is unclear as to whether Labor denied benefits under paragraph (1), (2), or (3) of 19 U.S.C. § 2272, Labor must deny certification for trade adjustment assistance if any of the three paragraphs is not established. *Former Employees of Asarco's Amarillo Copper Refinery v. United States,* 11 CIT ——, 675 F.Supp. 647, 651 (1987); *Abbott v. Donovan,* 8 CIT 237, 239, 596 F.Supp. 472, 474 (1984). The Court thus turns to each of the areas in 19 U.S.C. § 2272 (1982), to consider whether plaintiffs' claim of prejudice through the lack of a hearing moves the Court to set aside Labor's determination.

### 1. *Production Worker Separations Increased*

As the first requirement in order to certify a group of workers for adjustment assistance, the Secretary of Labor must determine that a significant number or proportion of the workers in such workers' firm or an appropriate subdivision of the firm have become totally or partially separated, or are threatened to become totally or partially separated. 19 U.S.C. § 2272(1).

Plaintiffs claim that without a hearing they were unable to present evidence as to increased separations in 1986 relative to 1985, the period immediately following the increase in lower-priced imports. *Plaintiffs' Brief,* at 5; *Plaintiffs' Reply Brief,* at 9.

Labor's investigation found that "average total employment at Bass Enterprises increased in 1985 compared with 1984 and in 1986 compared with 1985." 52 Fed.Reg. at 9968. While the record confirms that "average total employment" increased, there is also evidence that "average production worker employment" declined in 1986 compared with 1985. R. 33.

Plaintiffs urge that imports will not affect accountants, administrators, engineers, secretaries, janitors, health club employees, security personnel, and other workers who are involved in other activities of Bass but are not engaged in producing crude oil or natural gas. R. 47. Plaintiffs argue that Labor should have considered only the geologists, geophysicists, and landmen at Bass as an appropriate subdivision for adjustment assistance. Plaintiffs claim that without a hearing they could not

establish that Bass employed a total of 13 geologists and geophysicists at its facilities in Fort Worth, Texas from late 1985 through 1986, but by the end of 1986, 6 were terminated and not replaced, for a reduction of 46% in 1.25 years. R. 46–47. Plaintiffs also claim that without a hearing they could not establish that Bass employed 21 geologists, geophysicists, and landmen in the exploration and development department in late 1985 through 1986, but by the end of 1986 7 were terminated for a total reduction of 33% in exploration and development. R. 47.

Labor stated that it conducted its investigation on behalf of all workers because geologists, geophysicists, and landmen do not "produce" an article but instead provide a service. 52 Fed.Reg. at 9968.

This Court has recently considered whether employees of a company that drills a well, but neither owns it nor manages the extraction of oil from it, produced oil within the meaning of the term "produced" as it is used in 19 U.S.C. § 2272(3) (Supp.III 1985). *Former Employees of Zapata Offshore*, 11 CIT at ——, Slip Op. 87–124, at 10 stated that Labor's interpretation of the term "produced" does not embrace the performance of services, and that implicit in Labor's position

> is a conclusion that, as for oil, production does not include preparation prior to extraction of the oil, such as drilling the well, regardless of the necessity of such preparation. Since [Labor] does not view drilling of the well as production of oil, it is reasoned that drilling is a service to the oil and gas industry which produces the oil (presumably those companies which own the wells and manage the extraction of oil).

This situation with Bass differs from *Zapata* because these Bass employees were employed within the exploration and production department of a company which owns the wells and manages the extraction of oil. It is thus an open question in this Court as to whether the duties performed by these geologists, geophysicists, and landmen constituted production.

Plaintiffs claim that without a hearing they were unable to present evidence that geologists and geophysicists working full time for a single company perform essential duties in producing crude oil, including determining where a well should be drilled and to what depth, monitoring a well's progress as it is going down, interpreting and analyzing rock formations the well is penetrating for signs of crude oil, determining what zone the well will produce from when crude oil is found, determining the oil water contacts in the rock formations that are developing when production is established in order to further decide the placement of additional wells to increase oil production, ascertain physical characteristics of the producing formations, determine how to enhance oil production, and place into motion the determined enhancement procedures. *Plaintiffs' Reply Brief*, at 25–27. Plaintiffs assert that "if there is *one* group of workers that can be considered production workers in the oil and gas industry, it unquestionably must be geologists and geophysicists." *Id.* at 26.

The Court finds that the only evidence in the record to support Labor's finding that geologists, geophysicists, and landmen are not production workers is the titles of the jobs themselves. The record does not disclose what duties these workers performed. The record does not even disclose what a landman is. There is thus no showing of reasoned analysis nor substantial evidence on the record to support Labor's determination. The Court finds that as to 19 U.S.C. § 2272(1), the plaintiffs have met their burden of proving prejudice through lack of notice of the 10–day period in which to request a hearing.

The Court thus proceeds to consider the plaintiffs' claims concerning the remaining two paragraphs of 19 U.S.C. § 2272.

### 2. *Sales or Production*

As the second requirement to certify a group of workers for adjustment assistance, the Secretary of Labor must determine that sales or production, or both, of the workers' firm or subdivision have decreased absolutely. 19 U.S.C. § 2272(2).

The published notice of a negative determination stated that Labor's investigation revealed that "[s]ales or production did not decline during the relevant period as required for certification." 52 Fed.Reg. at 12,622.

The record shows that Bass' sales and production of crude oil increased in quantity in 1985 compared with 1984 and in 1986 compared with 1985. R. 11, 33. However, plaintiffs argue that the record also shows that Bass' sales and production of natural gas declined in quantity in 1985 compared with 1984 and in 1986 compared with 1985. R. 12, 21, 33.

Labor did not distinguish between sales and production of oil and natural gas, nor did it offer any explanation for not even addressing the decline in sales and production of natural gas. Labor did state that "Bass Enterprises produces and sells mainly crude oil. Some natural gas is produced and sold; however the workers are not separately identifiable by products." 52 Fed.Reg. at 9968. This statement does not explain why Labor found that "sales or production did not decline" when in terms of quantity, the company decreased production and sales of one of the products it produced while increasing production and sales of the other product produced.

Plaintiffs urge that without a hearing they were not able to argue that under the circumstances of this case, Labor should have also considered the dollar value of Bass' sales. Plaintiffs would have presented evidence that when examined in terms of value, Bass' sales and production of both crude oil and natural gas declined from 1984 to 1985 and from 1985 to 1986.

Labor did not present a reasoned analysis for its failure to address the decreases in natural gas. *See Former Employees of Homestake Mining,* 12 CIT at ——, Slip Op. 88–41, at 5; *Former Employees of Zapata,* 11 CIT at ——, Slip Op. 87–124, at 3–4; *Former Employees of Asarco's,* 11 CIT at ——, 675 F.Supp. at 649; *Chapman,* 9 CIT at 547. At a public hearing plaintiffs may argue that Labor should not apply its practice of not looking to value when Labor encounters workers who produce two products, and sales of one product increase while sales of the other product decrease. *See Former Employees of Asarco's,* 11 CIT at ——, 675 F.Supp. at 650.

The Court thus proceeds to the final element which Labor must find in order to certify workers as eligible for adjustment assistance benefits.

### 3. *Imports*

As the final requirement to certify a group of workers for adjustment assistance, the Secretary of Labor must determine that increases of imports of articles like or directly competitive with articles produced by the workers' firm or an appropriate subdivision contributed importantly to the workers' total or partial separation, or threat thereof, and to the decline in sales or production. 19 U.S.C. § 2272(3).

Plaintiffs claim that without a hearing they were unable to present evidence as to increased imports in 1986. *Plaintiffs' Brief,* at 5.

### a. Crude Oil

Labor found that United States imports of crude oil "decreased absolutely and relative to domestic shipments in 1985 compared to 1984." 52 Fed.Reg. at 9968. The record contains evidence to support this finding, and plaintiffs do not dispute it. R. 29, 46, 54. However, the plaintiffs argue that without a hearing they were unable to present evidence that imports increased in late 1985 and 1986, the period just prior to when geologists and geophysicists were terminated at Bass. R. 29, 46. Plaintiffs would have presented evidence that from February of 1985 to February of 1986 imports of crude oil increased by 36.7%. R. 56. Plaintiffs also would have presented evidence that from January to September of 1986, imports increased by 24% over the same period in 1985. R. 29.

Labor also found that "customers accounting for a substantial portion of sales and production at Bass Enterprises decreased purchases of imported crude oil in the first half of 1986 compared with the first half of 1985." 52 Fed.Reg. at 9968. Plaintiffs argue that without a hearing they were unable to establish that Labor's

finding is only part of the picture, because the same customers did increase their purchases of imported crude oil in 1985 compared with 1984. R. 31, 34. The plaintiffs also complain that without a hearing they were unable to present any information to Labor on the import purchases of [a confidential entity accounting for a confidential amount of Bass' sales even greater than the "substantial portion" which Labor examined]. R. 34; *Plaintiffs' Reply Brief,* at 11–12.

### b. Natural Gas

The *Federal Register* notices make no findings concerning imports of natural gas. In its investigation, Labor found that United States imports of natural gas declined absolutely and relative to domestic shipments in the first half of 1986 compared to 1985. R. 36. The record also shows that United States imports of dry natural gas in 1985 increased over 1984 imports. R. 30. Labor further did not investigate the import purchases of any of Bass' natural gas customers, and there was no hearing at which plaintiffs could present evidence as to those purchases.

The Court finds that the plaintiffs have established that the lack of a hearing prejudiced the plaintiffs in that they could not present evidence of increasing imports of oil and natural gas.

### CONCLUSION

The Court finds the plaintiffs have established prejudice as to each of the eligibility requirements under 19 U.S.C. § 2272. The Court follows the earlier decisions which state that Labor's determination must be set aside when the plaintiffs establish prejudice through the lack of a hearing. *Former Employees of Homestake Mining,* 12 CIT at ——, Slip Op. 88–41, at 13–15; *Miller v. Donovan,* 9 CIT at 476–79, 620 F.Supp. at 716–17; *Estate of Finkel,* 9 CIT at 378–79, 614 F.Supp. at 1246–49. Labor's determination denying adjustment assistance is accordingly vacated and remanded for a new investigation.