FORMER EMPLOYEES OF TYCO TOYS, INC., PLAINTIFFS *v.* WILLIAM E. BROCK, SECRETARY OF LABOR, DEFENDANT

Court No. 87–09–00945

(Decided March 31, 1989)

*International Union, UAW* (*Jordan Rossen, Leonard R. Page* and *Richard W. McHugh*) for plaintiffs.

*John R. Bolton,* Assistant Attorney General, *David M. Cohen,* Director, Commercial Litigation Branch (*Jane E. Meehan*), Civil Division, United States Department of Justice, for defendant.

## OPINION

RESTANI, *Judge:* Plaintiffs, former employees of Tyco Toys, Inc., bring this action challenging the Secretary of Labor's denial of trade adjustment assistance. Presently before the court for review are the remand results ordered in *Former Employees of Tyco Toys, Inc.* v. *William E. Brock,* 12 CIT 781, Slip Op. 88–114 (Aug. 26, 1988). In that opinion, the court held that the Secretary had failed to conduct an adequate investigation and that the determination denying trade adjustment assistance was not supported by substantial evidence as required by law. *See* 19 U.S.C. § 2395(b) (1982). Specifically, the court ordered that an investigation be conducted "so that the Secretary has evidence on which to base a decision that increased imports did or did not contribute importantly to work sepa-

rations." *Former Employees of Tyco Toys, Inc.* at 5. Of particular concern to the court was the absence in the administrative record of business records of the purchasing company and a statement by the purchasing company as to why it closed the Lakeville plant and what happened to production of the items produced at the plant following the sale. *Id.* at 3–4. The court noted that an issue to be examined was whether "customers turned to imported products or whether the corporate purchaser foreign sourced domestically produced items," *id.* at 4, and directed the Secretary to seek the relevant information from Tyco Toys, to conduct a customer survey, if possible, and to take any other steps deemed necessary to reach substantiated conclusions.

Pursuant to the court's remand order, the Secretary reopened the investigation to obtain further information. The department obtained Shaper Manufacturing's sales and production data for 1985 and 1986 as well as information from Shaper's corporate purchaser, Tyco Toys, Inc. The Secretary also conducted a customer survey of Shaper's principal customers. Confidential Supplemental Administrative Record (CR) at 1–9. After considering this information, the Secretary reaffirmed his original denial of eligibility to apply for adjustment assistance. CR at 13 (Negative Determination on Remand). After reviewing the expended administrative record and the arguments of parties, the court finds the Secretary's determination to be supported by substantial evidence and in accordance with law.

Section 222 of the Trade Act of 1974 directs the Secretary of Labor to certify a group of workers as eligible to apply for trade adjustment assistance if he determines:

> (1) that a significant number or proportion of the workers in such workers' firm or an appropriate subdivision of the firm have become totally or partially separated, or are threatened to become totally or partially separated,
> (2) that sales of production, or both, of such firm or subdivision have decreased absolutely, and
> (3) that increases of imports of articles like or directly competitive with articles produced by such workers' firm or an appropriate subdivision thereof contributed importantly to such total or partial separation, or threat thereof, and to such decline in sales or production.

19 U.S.C. § 2272 (1982 & Supp. IV 1986).[1] Failure to meet one of one these requirements will result in a denial of certification. *See, e.g., Former Employees of Asarco's Amarillo Copper Refinery* v. *United States,* 11 CIT 815, 675 F. Supp. 647, 651 (1987) (plaintiffs must satisfy all three requirements of Section 222 before they are eligible

---

[1] The Omnibus Trade and Competitiveness Act of 1988 renumbered this section as 19 U.S.C. § 2272(a) and added a provision concerning the eligibility of oil and gas workers to apply for adjustment assistance. 19 U.S.C. § 2272 (1982 & Supp. IV 1986), *as amended* by the Omnibus Trade and Competitiveness Act of 1988, Pub. L. No. 100–418, § 1421(a)(1), 102 Stat. 1107, 1242–44 (1988). These new provisions do not alter the requirement that all three criteria of § 2272(a) must be met in order for the Secretary of certify eligibility for trade adjustment assistance.

for trade adjustment assistance). In this case, the Secretary determined that the third criterion had not been met.

As indicated in the previous opinion, work at the Lakeville plant was limited to production of accessories and packaging for the Stompers toy, an imported product which was shipped in bulk to Lakeville. the Lakeville plant also produced a "Cosom" line of toys and sporting goods and a line of children's games. The record clearly indicates that sales and production of the Cosom and game lines did not decline during the period of investigation. Furthermore, Tyco has stated that production of these two lines was transferred or sold to other domestic manufacturers. CR at 2. These product lines do not appear to have been affected by imports in any way. Sales and production related to the Stompers product, however, did undergo a substantial decline during the period. Given this decline, the relevant question becomes whether the decline was, at least, partially caused by imports of goods "like or directly competitive" with those produced by the firm.

The customer survey performed by the department supports the department's finding that the substantial decline in demand for the Stompers toy was due to a decline in the toy's popularity. This decline appears to correspond to a rise in popularity of other children's toys. CR at 3, 4. While the decline in popularity of the imported Stompers vehicle undoubtedly had a deleterious effect on the domestic production and sales of accessories for the vehicle, no showing has been made that the production and sales of those accessories was in any way displaced by increasing imports.[2] Rather, the record reveals that there were no foreign accessories that competed with those produced at Lakeville. Furthermore, Tyco has stated that it has never foreign sourced the accessories and that while it continued to sell the imported Stompers toy after the purchase of Shaper Manufacturing in 1986, it ceased production of the accessories at that time.

Because the record supports a conclusion that imports of "articles like or directly competitive" with articles domestically produced by plaintiff workers' firm have not "contributed importantly" to plaintiffs' separations, the court must sustain the Secretary's determination that the group eligibility requirements of 19 U.S.C. § 2272 have not been met.[3]

---

[2] In their brief, plaintiffs stress the importance of Stompers-related work to the Lakeville plant and make much of the Secretary's statement in the remand determination that "Shaper produced in the accessories which accounted for only a small part of the Stompers toy sales." Plaintiffs Brief at 3 (citing CR at 13). The relevant portion of Shaper's sales attributable to Stompers accessories is irrelevant, however, to the Secretary's finding in this case that increasing imports did not cause the decline in production and sales of the accessories.

[3] Plaintiffs also argue that "[t]he Secretary failed to investigate whether or not Stompers-related work at Shaper was segregated from other work [and that a] partial certification, *at a minimum,* appears appropriate in this case." Plaintiffs' Brief at 5 n.2. The Secretary did find, however, in the original investigation that workers at Shaper "were not separately identifiable by product." Confidential Administrative Record at 26. In any event, given the lack of a causal relationship between increased imports and any decline in Stompers-related work at Shaper discussed above, there appears to be no basis for any partial certification.