INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, UAW AND UAW LOCAL 595, PLAINTIFFS *v.* SECRETARY OF LABOR, DEFENDANT

Court No. 90–05–00263

(Decided May 28, 1993)

*Leonard R. Page,* Associate General Counsel, International Union, UAW, *(Richard W. McHugh),* Associate General Counsel, International Union, UAW, for plaintiffs.

*Stuart E. Schiffer,* Acting Assistant Attorney General, *David M. Cohen,* Director, Commercial Litigation Branch, Civil Division, United States Department of Justice *(Patricia L. Petty), Gary Bernstecker,* United States Department of Labor, of counsel, for defendant.

## MEMORANDUM OPINION

DiCARLO, *Chief Judge:* Plaintiffs, representing former employees of a General Motors assembly plant, challenge the Department of Labor's determination denying certification for trade adjustment assistance under 19 U.S.C. § 2272 (1988). *General Motors Corp., Boc Linden, Linden, New Jersey,* 57 Fed. Reg. 53,141 (Dep't Labor 1992) (third notice of negative determination on reconsideration). The case was first remanded in June 1991. *See International Union v. United States Secretary of Labor,* 15 CIT 272, Slip Op. 91–48 (June 7, 1991). Subsequently, unpublished orders dated December 18, 1991 and September 1, 1992 directed remand for the second and third reconsideration. The court finds that Labor provided a reasoned analysis with factual data in its third remand determination. Since Labor's negative determination is supported by substantial evidence, the court affirms the results.

## BACKGROUND

Plaintiffs assembled "L-body" vehicles, which General Motors sells as Chevrolet Beretta and Corsica passenger automobiles. The Beretta is a two-door sedan which seats four adults, has a wheelbase of 103.4 inches, is available with a standard four-cylinder or an optional six-cylinder engine and had a 1989 base price of $11,000. The Corsica is a four-door sedan built on the same chassis, with the same wheelbase and engine options having a 1989 base price of $10,410. *See International Union,* 15 CIT at 272, Slip Op. 91–48 at 2.

To determine whether increased imports of like or directly competitive articles contributed to the workers' separations, Labor examined changes in market shares of competitive domestic and imported vehicles in comparison with the subject vehicles. Labor found in its original determination that Beretta and Corsica automobiles would be competitive with cars having the following characteristics:

> 1. Vehicles in the classification should generally be offered in both two-door and four-door form. There should be seating for at least four adults, even in the two-door versions. Sports cars and sports

coupes of the 2+2 configuration compete most directly in other classes.

2. Base prices should generally fall into the $8,000 to $10,000 range. For the most part, sticker prices for well-equipped models range from $12,000 to $14,000, possibly as high as $15,000. These prices should be used for comparison only. Individual dealer policies, the existence of publicized or secret rebates, etc. make determinations of actual as-delivered prices impossible.

3. In exterior size, wheelbase should fall between 97 and 103 inches. Two-door versions are usually a little shorter than four-door versions of the same nameplate; this is not true of the L-bodies, which share the same chassis.

4. Standard engines should be four-cylinder types; optional engines should be no larger than small six-cylinder types.

R. 18.

In remanding the initial determination, the Court noted that plaintiffs conceded the above criteria were reasonable, and that the government agreed the record lacked a reasoned explanation why Labor included in its analysis vehicles which differed substantially from the stated criteria. *International Union,* 15 CIT at 273, Slip Op. 91–48 at 4. Labor agreed to consider plaintiffs' list of vehicles which they believed should have been excluded or included in Labor's analysis, together with plaintiffs' reasons for exclusion or inclusion. *Id.*

Although Labor agreed to exclude some of the imported models from the analysis, it again reached a negative determination because Beretta and Corsica automobiles and competitive imported vehicles both lost market share while the competitive domestic vehicles gained market share. *General Motors Corp., Boc Linden, Linden, New Jersey,* 56 Fed. Reg. 50,593 (Dep't Labor 1991) (negative determination on reconsideration). The matter was remanded to Labor again at defendant's request. Although Labor made minor adjustments, it affirmed its denial of eligibility for adjustment assistance. *General Motors Corp., Boc Linden, Linden, New Jersey,* 57 Fed. Reg. 931 (Dep't Labor 1992) (second notice of negative determination on reconsideration). Both parties moved for the third remand, and the court ordered Labor to:

1. include in the record *factual data* relied upon in determining passenger accommodations and cargo capacity and explain how they are applied in analyzing imported and domestic vehicles,

2. explain why its latest market segments include domestic vehicles with published prices which are lower than the published prices of imported vehicles when it stated at page 89 of the First Supplemental Record that one must "adjust published prices of domestic vehicles significantly downward before comparing them to published prices of imports," and

3. explain on what basis it distinguishes the eleven imported vehicles which were too small and or too inexpensive to be like or directly competitive with the vehicles produced by plaintiffs from the five domestic vehicles which plaintiffs claim are too small and or in-

expensive to be like or directly competitive with the vehicles produced by plaintiffs.

*International Union,* Court No. 90–05–0023, Order (Sept. 1, 1992).

Labor in its third remand determination provided more detailed explanation of the market segments, but denied the certification for trade adjustment assistance. 57 Fed. Reg. at 53,143. Plaintiffs move for a fourth remand. The issue presented here is whether Labor's negative determination provides a reasoned analysis and is supported by substantial evidence.

DISCUSSION

Trade adjustment assistance is available to workers separated from employment when Labor determines, *inter alia,*

> that increases of imports of articles like or directly competitive with articles produced by such workers' firm or an appropriate subdivision thereof contributed importantly to such total or partial separation, or threat thereof, and to such decline in sales or production.

19 U.S.C. § 2272(a)(3) (1988). Labor denied plaintiffs' petition finding that they did not satisfy this requirement.

Labor's findings must be upheld if they are supported by substantial evidence in the record. 19 U.S.C. § 2395(b) (1988). "Substantial evidence 'is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Matsushita Elec. Indus. Co. v. United States,* 3 Fed. Cir. (T) 44, 51, 750 F.2d 927, 933 (1984) (quoting *Consolo v. Federal Maritime Comm'n,* 383 U.S. 607, 619–620 (1966)). Labor's determination made on the basis of those findings must be in accordance with law and must not be arbitrary or capricious, and for this purpose the law a showing of reasoned analysis. *Former Employees of Bass Enters. Prod. Co. v. United States,* 12 CIT 470, 472, 688 F. Supp. 625, 627 (1988).

Plaintiffs object to Labor's inclusion of "boxy, entry-level, subcompact cars" in the market segments for competitive imported and domestic vehicles, claiming those models differ widely in size and price from Beretta and Corsica automobiles. Although plaintiffs continue to challenge the inclusion of certain imported vehicles, their objection focuses on the inclusion of five domestic models.

Plaintiffs allege that the five domestic models in Labor's market segment should be excluded because they are more similar to the eleven imported models that were excluded upon reconsideration than to the subject vehicles. Plaintiffs emphasize the differences in passenger accommodation. In particular, they point out that the differences between the subject vehicles and the five domestic models is greater than the differences between the domestic models and the excluded imported models in terms of wheelbase, width, leg room, head room and shoulder room. Thus, plaintiffs argue that Labor's market segment based on passenger accommodation lacks objective support.

Labor included in the administrative record of the third remand determination the factual data it relied upon in determining passenger accommodations and cargo capacity. 3d Supp. R. at 5–6 (incorporating *Consumer Reports* 268–69 (1989)). Although Labor included the information on measurements in the record, it also stated "[t]he tape measure doesn't tell you everything about comfort." (quoting *Consumer Reports*). 57 Fed. Reg. at 53,141. It further explained:

[T]he interior measurements can only be used in conjunction with direct inspection of the vehicles in question to draw conclusions about passenger accommodations. [Labor]'s auto analyst conducts just such an inspection every year, and uses the conclusions obtained from these inspections to help in making accurate judgments about which vehicles offer comparable passenger accommodations.

*Id.* Labor thus provided the factual data it relied on in response to the court's remand order.

Plaintiffs also contend that Labor failed to provide a reasoned explanation as to its price criterion. They object to the inclusion of the same five domestic models because their prices are lower than the subject vehicles. Plaintiffs challenge Labor's following finding, claiming it is not supported by substantial evidence.

During the calendar years covered in the analysis (1988 and 1989), it was standard practice for domestic makers to publish base prices for stripped (poorly equipped) vehicles; importers did not follow this practice. Therefore, a true comparison of comparably-equipped domestic and imported vehicles requires that domestic vehicles with lower base prices be included.

*Id.* at 53,142.

Labor cited two sources. One is a study titled "Quality Change Under Trade Restraints in Japanese Autos" by Robert C. Feenstra, which found evidence of substantial upgrading in imported cars from Japan after the Voluntary Restraint Agreement entered into effect in 1981. *See* 3d Supp. R. at 9–17. The other was the data on average prices paid for domestic and imported cars compiled by the U.S. Department of Commerce's Bureau of Economic Analysis (as reported by the Motor Vehicle Manufacturers Association), showing the average import car prices consistently exceeded the average domestic car prices since 1982. *Id.* at 7–8. While a different interpretation of these authorities may be possible, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Matsushita Elec. Indus. Co.*, 3 Fed. Cir. (T) at 51, 750 F.2d at 933.

The court finds it significant that Labor took both passenger accommodation and price factors into consideration. Labor explained "no one vehicle characteristic defines its market segment." 57 Fed. Reg. at 53,142. Table I in the third remand determination shows the five characteristics representing passenger accommodation and the prices of the

challenged domestic models and the excluded imported models. Labor explained:

> The five domestic and eleven imported vehicles all have comparable front leg room. Rear leg room measurements are also not generally different among these cars. However, there are very clear differences in wheelbase, overall length, luggage capacity and price. The latter characteristics are more than important enough to distinguish the five domestic vehicles from the eleven imported ones in a market analysis.
>
> The wheelbase measurements of the eleven imported vehicles (except for the LeMans) are significantly smaller than the five domestics. The overall length measurements are also significantly smaller. Luggage capacities are also smaller among the imports. Although these measurements criteria, except for the overall length, do not apply as strongly to the imported Pontiac LeMans, the base prices [of] all of the imports are significantly smaller than those of the domestic vehicles.
>
> In the analysis of published list prices above, it shows that base prices of imports should be somewhat higher than base prices of equivalent domestic models. *These factors, all taken together,* are the reasons that the listed imports were excluded from the market analysis while the listed domestic models were included.

57 Fed. Reg. at 53,142 (emphasis added).

Labor concluded that the excluded imported models belong to different classes from the included domestic models. The court is not persuaded by plaintiff's argument that "boxy, entry-level, subcompact" domestic models should be excluded because they are more similar to the excluded imported models than to the subject vehicles. Plaintiffs do not claim that the differences between the included domestic models and the subject vehicles are more significant than the differences between the excluded imported models and the subject vehicles. Plaintiffs' argument would require Labor to exclude every model which is more similar to the excluded models than to the subject vehicles. Labor needs to draw a line somewhere. It would be impractical to require Labor to construct market segments so that all included models are more similar to the subject vehicles than to all excluded models. "The nature and extent of the investigation in each case are 'matters which properly rest within the sound discretion of the Secretary [of Labor].'" *Miller v. Donovan,* 9 CIT 473, 479, 620 F. Supp. 712, 718 (1985) (quoting *Woodrum v. Donovan,* 4 CIT 46, 51, 544 F. Supp. 202, 205 (1982)). In compliance with the court's third remand order, Labor provided factual data which it relied upon in determining passenger accommodations and cargo capacity and explained its application.

CONCLUSION

Labor's finding that increased imports of like or directly competitive vehicles did not contribute to plaintiffs' separation is supported by substantial evidence. The court affirms Labor's determination denying certification for trade adjustment assistance to plaintiffs.